# HILDEBRANDT AUGUST VON GLAHN

*v.*

# MATILDA VON GLAHN.

1. INSTRUCTIONS—*must embrace the issues presented by the proofs.* In a suit for a divorce, upon the ground of extreme and repeated cruelty, where the main issue presented by the proof was, whether the complainant had been guilty of like conduct, or of conduct which provoked the acts charged, it was error for the court to instruct the jury, "that if they find that the defendant has been guilty of extreme and repeated cruelty, they should find for complainant," as such an instruction presents only a partial view of the case, and in the absence of any explanatory clause, wholly ignores the question presented by the evidence.

2. DIVORCE—*mere physical comfort—no ground for a divorce.* And an instruction is equally erroneous which makes the right of the complainant, in a suit brought by the wife, to a verdict, depend on her mere physical comfort.

3. SAME—*motive for violence done—a material subject of examination.* In such case, it was error for the court to instruct the jury, "that where violence is used, it is immaterial what the motive was." The motive is a most material subject of examination. No court will dissolve the marriage tie at the prayer of the wife, because of violence provoked by her own misconduct, even though such violence should proceed to blows.

4. SAME—*no degree of provocation will excuse a blow given in a mode to endanger life or limb—except in what case.* Where a blow is given in a mode to endanger life, or cause a serious bodily injury, unless given in strict defense of life or limb, no degree of provocation can excuse the act.

5. WITNESS—*concerning impeachment of.* Where a person, on her examination as a witness, swore to certain facts, and to impeach her testimony an affidavit was introduced made by her previous to her examination on the trial, in which she swore to a state of facts totally opposed to her testimony, it was error for the court to instruct the jury, evidence having been introduced to show that she did not comprehend the statements of the affidavit, that, if the witness did not understand the *whole* import of the facts stated in the affidavit, they were to give it no effect; because the rule is, if the witness swore knowingly to any *one* statement in the affidavit, and testified differently concerning the same matter, to such extent her testimony was impeached.

6. DIVORCE—*concerning defenses to suit for—when conspiracy is charged—a failure to sustain—incurs no peril.* Where a defendant in a suit for a divorce, charges the complainant with having conspired with other members of her family to procure the divorce, as a means of obtaining money from him by way of alimony, the failure to sustain such charge of conspiracy constitutes no additional act of indignity, to be taken into account by a jury in rendering their verdict.

7. . ALIMONY—*in what cases—the allowance of property absolutely—will not be sanctioned.* Where the property of the husband was accumulated by him before marriage, and the wife brought no property to him upon the marriage, it would be unjust to decree to her as alimony, after decree of divorce pronounced, a large amount of the husband's property, absolutely.

8. SAME—*what considered the better practice in such case.* In such case, the alimony should be left in such shape that it can be reduced, or withdrawn, in case the wife should misconduct herself, and the statute evidently contemplated an allowance to be paid at stated intervals for the wife's support, which, in the present case, is regarded as the better practice; there being no difficulty in making the payment of such allowance secure.

9. VERDICT—*should embrace.a finding upon each issue raised by the pleadings and proof.* In cases of this character, it would tend to promote justice, and greatly aid the court in its decree, if the jury were instructed to find upon each issue raised by the pleadings and proof, instead of finding a general verdict.

APPEAL from the Superior Court of Chicago.

The facts in this case are sufficiently stated in the opinion.

Messrs. KNOWLTON & JAMIESON and Messrs. MILLER, VAN ARMAN & LEWIS, for the appellant.

Mr. JAMES L. STARK, and Mr. D. GOODWIN, JR., for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill for divorce, brought by Matilda Von Glahn against August Von Glahn, her husband. The bill charges extreme and repeated cruelty inflicted by means of violence towards the person of the wife, accompanied with abusive language, and also charges the defendant with having neglected to furnish suitable food, clothing, medical attendance, and other necessaries in sickness. The answer denies all the charges of the latter character, and it denies the physical violence except so far as it was properly induced by the insulting and violent acts of the complainant, against whom, by way of recrimination, and also as justifying the violence of the defendant, it charges acts of cruelty, and language of the most insulting character. There was a general replication, and the issue was submitted to a jury, who found a general verdict against the complainant. The court thereupon pronounced a decree of divorce, and at a subsequent day awarded alimony. The defendant prosecuted an appeal from both decrees.

The counsel for appellant rely chiefly upon alleged errors in the instructions given for the complainant, as a ground for reversal. The counsel for appellee urge, if there was error in the instructions, it could have worked the defendant no injury, as the verdict was plainly right upon the evidence, and could not have been otherwise. In this we do not concur with the counsel for the appellee. We have found it extremely difficult to arrive at a satisfactory conclusion upon this evidence. It is not only contradictory in the highest degree, but there is much of it, on both sides, which should clearly be received with great caution and suspicion. As we remand this case for another trial, it would not be proper for us to express our opinion as to whether the verdict rendered was right or wrong, but we have no hesitation in saying that the case does not belong to that class in which it is the practice of this court to refuse to reverse, notwithstanding error in the instructions, because the verdict was plainly right.

There are, however, some facts in this case proven beyond controversy. The appellant did, undoubtedly, on several occasions, strike his wife, and in one instance, at least, the blows were sufficiently severe to leave their marks upon her breast for days thereafter. On the other hand, it is proven, with equal clearness, that the appellee, on several occasions, spit in the face of her husband, and applied to him opprobious epithets. It is also clear that both parties were persons of violent and unrestrained passions. They were married in the year 1863, and for some time resided in the family of appellee. Quarreling began between them soon after the marriage, and other members of the family of appellee participated in the disputes and blows.

These are the general facts proven beyond controversy. In the details of the evidence showing, or offered for the purpose of showing, where the responsibility for these disgraceful events actually lay, there is, as already remarked, an irreconcilable conflict. There are witnesses, called by the complainant,

18—46th Ill.

who testify to the most brutal conduct on the part of the husband, while there are others, called by the defendant, who swear to acts of equal indignity, and almost equal violence, on the part of the wife, who is proven to have been a person of strong physical frame.

In a case so clouded by contradictory evidence, and especially in one presenting the issues submitted to the jury on this record, it was of the utmost importance that the jury should be very plainly and clearly instructed as to the law. When a case of this character is submitted to a jury to find merely a general verdict, upon which the fact of divorce is to turn, they are very liable to be impressed by the idea that it is better for both parties that a divorce should be decreed, and to allow that consideration to influence their verdict, without knowing or remembering what grave consequences, in respect of alimony and the custody of the children, a verdict for the complaining party may draw after it.

The first, second, and third instructions given to the jury in this case for the complainant, were as follows :

1. "That if they find that the defendant has been guilty of extreme and repeated cruelty, it is their duty to find and return a verdict for the complainant; and that in arriving at this conclusion, it is their duty to take from the court, as a matter of law, what constitutes extreme and repeated cruelty."

2. "That if they find that violence has been once actually shown, then they may take into account all other cruelty, whether addressed to the body or mind ; and if they find that the physical existence or comfort of the complainant demands a separation on the ground of real physical safety, then they should return a verdict for the complainant."

3. "That the jurors are not to look solely to the motive whence the harm proceeds ; and that when violence is used, it is immaterial what the motive was. That a blow, a pinch, choking, or any other force, is sufficient, and that in connection with any such violence, they may take into account the

withholding of proper food, and necessary medical assistance in sickness."

We think these instructions tended to mislead the jury, because founded upon a partial view of the case, and making their verdict to turn upon only one of the issues before them. It was the duty of the jury first to inquire whether acts of violence, or any other acts amounting to extreme cruelty, had been committed by the defendant upon the complainant; and secondly, if such acts had been committed, whether the complainant had been guilty of like conduct, or of conduct which might be reasonably expected to provoke the acts charged against the husband. The last was really the main issue presented by the evidence, and the one upon which an intelligent verdict of the jury was most needed. It may be said that the first of these instructions was not erroneous in telling the jury to find for the complainant, if the defendant had been guilty of extreme and repeated cruelty, because acts of violence would not be cruelty, in the eyes of the law, if they had been provoked by similar acts, or by acts of great indignity and insult, and if they were not out of all proportion to the provocation. But in the absence of any explanatory clause, a jury would understand this instruction as ignoring wholly the question, whether the complainant had been guilty of like cruelty towards the defendant, or had given provocation to him by her own misconduct.

The second instruction is somewhat ambiguous, and may be understood in a sense that would render it unobjectionable, though, so far as it makes the right of the complainant to a verdict depend on her mere physical comfort, it was erroneous.

But no explanatory criticism can remove the objections to the third. In that, the jury are distinctly told, "when violence is used, it is immaterial what the motive was." By the term motive, we understand the court to mean the inducement or moving cause. But whether used in reference to the cause which provoked the violence, or the object the defendant

had in view in inflicting it, it is in this case a most material subject of examination. It was the motive which gave its moral complexion to the act. That violence to the extent of blows, had been inflicted by the defendant on the person of the complainant, had been clearly proven. The question was, whether that violence had been inflicted under wanton provocation on the part of the complainant, and was only the working of ordinary human passions brought into exercise by her misconduct, and whether, if it had been thus induced, it was out of all reasonable proportion to such provocation. This is the very marrow of the case. The law upon this point is not a subject of dispute. Undoubtedly there are some men, and it is to be hoped there are very many, in whom the reverence for womanhood is a sentiment so powerful, that no insult or violence coming from a woman, and stopping short of imminent danger to life or limb, could extort from them a blow—certainly not, if the offender is a wife and the mother of their children. From a field of combat, where a woman is the opposing party, there is no dishonor in retreat. But while we may censure a husband who allows himself to be provoked by his wife to blows, the law of divorce is not administered upon these principles. The common law right of the husband to chastise the wife has been justly repudiated in the American courts. Yet no court has dissolved the marriage tie, at the prayer of the wife, because of violence provoked by her own misconduct, even though such violence should proceed to blows. As was very wisely said by Sir William Scott, afterwards Lord STOWELL, in *Warring* v. *Warring*, 2 Phillim. 132 : "The remedy is in her own power; she has only to change her conduct; otherwise the wife would have nothing to do but to misconduct herself, provoke illtreatment, and then complain." Still, even in cases where the wife has been at fault, the violence of the husband must not be out of all proportion to the provocation, and if it is so, she will be entitled to her decree. If the husband has under-

taken to burn his wife alive, as alleged in *Best* v. *Best,* 1 Add. Ec. 411, or to occasion a premature delivery, as charged in *Evans* v. *Evans,* 1 Hag. Con. 35, no degree of provocation could excuse the act, and the same might be said of a blow given in a mode to endanger life, or cause a serious bodily injury, unless given in strict defence of life or limb.

The Superior Court recognized these principles in the fourth instruction given for the complainant, which was as follows:

"That if the jurors find that the defendant has been guilty of extreme and repeated cruelty, under the instructions above given, they should return a verdict for the complainant, unless they find that such cruelty was occasioned by the complainant's own misconduct, and that it is not sufficient to show misconduct, in no way proportioned to the cruelty of the defendant, and which could not have caused it."

The first instruction and this are alike, with the exception of the material qualification embodied in the latter in reference to the misconduct of the complainant, and the jury may have doubted which was to be their guide. On the other hand, the jury may have understood from the last instruction, and from the sixth instruction given for the defendant, what the rule of law on this subject is, and we might, in view of all these instructions, hesitate to reverse the judgment on account of errors in the first and third, were it not that the appellant has just reason to complain of the sixth and ninth.

One Caroline Kauffman was one of the most material witnesses for the complainant in the trial. To impeach her testimony, the defendant put in evidence an affidavit made by her, previous to her examination as a witness, in which she swore to a state of facts totally opposed to her testimony on the hearing. The complainant introduced evidence to show she did not comprehend the statements of the affidavit, and on this subject the court gave the following instruction:

6. "That the affidavit of Katherine Kauffman, is not evidence in this case of any distinct fact stated in it, and that portion marked by the court and read to the jurors, was admitted only to impeach her testimony given upon the stand, and that in giving any effect to it, they are to look at all the surrounding circumstances in the making and swearing to it, and that if they believe, that she did not fully understand the whole import of the facts contained in it, then they should not give any effect to it; and if they further believe from the evidence, that the defendant, or his assistants, used intentional artifice to get in facts that she did not fully understand the import of, they are at liberty to disregard the entire affidavit."

The error in this instruction consists in telling the jury, if the witness did not understand the *whole* import of the facts stated in the affidavit, they were to give it no effect, whereas the rule is, if the witness swears, knowingly, to any one statement in the affidavit, and testified differently about the same matter on the trial, to that extent her testimony was clearly impeached. As this witness was one of the most important upon the trial, the error in this instruction was material.

One of the grounds of defence in the Superior Court was, that the complainant had conspired with other members of her family to procure this divorce, as a means of obtaining money from the defendant by means of alimony. Various instructions were asked by both parties on this subject, and among those given for the complainant, was the following:

9. "Whether the charge of conspiracy is made out or not, is a question for the jury to determine, from the evidence. If the charge is not proved, the making of it is an additional act of indignity, and may be taken into account in rendering a verdict in this case, in connection with evidence of extreme and repeated cruelty, as defined by the court."

No authority has been cited in support of the latter branch of this instruction, nor do we think any can be found. If a party deems it necessary to his defence, in a contest involving his

good name, his property, and the custody of his children, to charge that his wife, in bringing him before the court upon an accusation of treating her with extreme and repeated cruelty, is not influenced by apprehensions for her personal safety, but by a desire to secure a portion of his property for the benefit of herself and her family, we can not see why he may not make that defence, with no more peril to himself in case he fails to prove it, then he would incur from charging his wife with having been herself guilty of cruelty, or other misconduct, by which his violence has been provoked. The position of a party defending in a proceeding of this character, would be dangerous indeed, if the measure of the complainant's proof could be filled up when deficient, by referring the jury to the fact that the husband, in his defence, has charged his wife either with cruelty towards him, or with a conspiracy to get his money.

The question of alimony has been raised and discussed by counsel, and if the jury on another trial should find the same verdict, the question will again recur. But it may recur on a very different state of proof, and we deem it proper to say nothing in regard to the amount, and only a few words as to the mode in which it should be allowed. The defendant was proved to own property worth about $100,000, and the court decreed as alimony twenty thousand dollars in money, and real estate worth about ten thousand. The power to decree alimony in this mode has been sanctioned by this court, but we do not deem this a proper case for its exercise. The estate of the defendant had been accumulated by him before his marriage. Her claim, therefore, to an absolute partition of it, is by no means the same, in an equitable point of view, that it would be if the property were the product of the joint labors and economies of the parties during their married life. Neither did the wife bring property to the husband upon her marriage. It would then, in our opinion, be unjust to give her absolutely a large amount of property, which, in the event

of the death of the child, followed by her own death, would go to her family, who are strangers to the blood of the defendant. Or suppose, what would be very likely to happen, that she should again marry and have children. On her death, intestate, the children by the second husband would each have the same share of this thirty thousand dollars with the child of defendant. Why should this complainant be provided more liberally out of her husband's estate, than she would be if they had led a peaceful life, and she were now a widow? The statute provides that the court "may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, as shall appear reasonable and proper." This is the practice of the English courts, and one object is, to leave the alimony in a shape where it can be reduced or withdrawn in case the wife should conduct herself improperly. Although the husband may have no right to complain, the duty of the court to the child might require the alimony to be withheld. The statute evidently contemplated an allowance to be paid at stated intervals for the wife's support, and in the present case, as it is now before us, we should regard this as the better practice. There seems to be no difficulty in making the payment of such an allowance secure.

We would remark, in conclusion, that although the practice of submitting a case of this kind to a jury to find a general verdict, is common, yet it would tend to promote justice, and greatly aid the court in its decree, if the jury were instructed to find upon each issue raised by the pleadings and proof.

The decrees of divorce and for permanent alimony must be reversed, and the cause remanded.

*Decree reversed.*