## Herbert M. Griswold v. Effie C. Griswold.

1. DEMURRER—*when error in overruling a. is waived.* Error cannot be assigned upon the overruling of a demurrer where thereafter an answer has been filed.

2. ALIMONY—*when a decree awarding, may be set aside.* A decree fixing the amount of alimony to be paid by a husband to his wife which has been entered by consent, is valid, but if such consent has been obtained by coercion, fraud or concealment of financial worth upon the part of the husband, a court of equity will, and it has inherent jurisdiction to purge such a decree of the fraud.

3. ALIMONY—*construction of section 18 of the Divorce Act which pertains to.* The power of a court of equity to purge a consent decree, fixing the amount of alimony to be paid by a husband to his wife, of fraud entering into the same, is not derived from section 18 of the Divorce Act.

4. ALIMONY—*approved practice as to the allowance of.* The proper method of awarding alimony is by fixing an annual allowance, payable at such intervals as may best suit the convenience of the husband and meet the demands of the wife; where, however, the husband has acquired property from his wife, and where his property is of such a description that it may be converted into money or divided in kind, there is no objection to an allowance in gross.

5. ALIMONY—*effect of awarding a gross sum by way of.* When a gross sum is awarded as alimony, it will be deemed a full discharge of all claim by the wife for future support, but where an annual allowance is decreed, the court has power to alter or modify such allowance, as the subsequent needs of the wife and the ability of the husband to pay may reasonably and properly require.

6. ALIMONY—*power of court to make an allowance of, a lien upon personal property.*  A court of equity has no power to make a decree for alimony a lien upon personal property.

7. ALIMONY—*power of court to protect the payment of, by injunction.*  It is doubtful if a court of equity has power permanently to enjoin a husband from selling or disposing of his property in order that the payment of a decree for alimony may be protected.

8. RE-OPENING CASE—*when proper.*  Where, upon a reference to a master to report the proofs without his conclusions, either party desires to offer further evidence on the hearing before the chancellor, such party is not precluded from so doing, as in cases where the master reports the proofs with his conclusions, but in such cases such further evidence should be offered in apt time, and if not offered in apt time, some reason should be assigned for the failure in order to entitle its subsequent introduction.

9. CUSTODY OF CHILDREN—*when question as to, cannot be raised.*  Upon an application by a wife to have a decree of divorce modified as to the amount of alimony to be paid to her, the husband cannot complain of such decree on the ground that it does not give to him the right to visit his children.

Petition by wife to modify decree fixing alimony because of coercion, fraud and concealment, which induced her consent thereto.  Appeal from the Circuit Court of Sangamon County; the Hon. OWEN P. THOMPSON, Judge, presiding.  Heard in this court at the May term, 1903.  Affirmed in part, reversed in part and remanded with directions.  Opinion filed November 9, 1903.

ALBERT SALZENSTEIN, for appellant.

ROBERT H. PATTON, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellant and appellee were husband and wife, until April 22, 1901, when their marriage was dissolved by a decree of the Circuit Court of Sangamon County, on a bill filed by appellee alleging adultery.  By the terms of that decree, the custody of their only child, Nellie, aged nine years, was awarded to appellee, and appellant was required to pay her as alimony, the sum of $37 per month for six months, and the sum of $27 per month, each and every month thereafter.  On September 6, 1902, appellee filed a petition in the Circuit Court of Sangamon County, averring that the original decree for divorce and alimony made no allowance for the support of the child and provided no security for the pay-

ment of alimony awarded appellee; that while the amount of the alimony awarded appellee by that decree was consented to by her, such consent was obtained by appellant through his falsehoods and misrepresentations to her, as to his financial worth; that appellant, for a year or more prior to the entry of said decree, represented to her that he was worth nothing; that he was broken up financially and on the verge of bankruptcy and was only keeping up appearances; that these statements by appellant were false and known to him to be so false, and were made by him to induce her to consent to the alimony decreed to her; that she relied on such statements by appellant and so consented to the alimony awarded her by the decree. The petition further avers, that at the time of said decree and for a year prior thereto, appellant was worth about $40,000 clear of indebtedness; that his income for the year preceding, was from $8,000 to $12,000; that he did a business for that year of about $40,000, and that appellee and her child are in poor health. The petition concludes with a prayer that the alimony awarded appellee by the original decree be set aside and that a just and proper amount be awarded her as alimony for the support of herself and her child.

Notice of the filing of this petition was served on appellant and upon the re-docketing of the original cause, appellant filed his demurrer thereto, which was overruled. Appellant then answered the petition denying all its material averments, and the cause was referred to the master in chancery, who reported the evidence without his conclusions. On the hearing before the chancellor, a decree was entered finding the facts substantially as averred in the petition and awarding appellee as alimony in gross, for the support of herself and her child, the sum of $4,900, together with the sum of $150 for her solicitor's fees. The provisions in the decree for the payment of the alimony by appellant and for security for the same, are as follows:

"That the defendant shall pay to the complainant each and every month commencing on the 3d day of March A. D. 1903, the sum of one hundred dollars in cash, and shall each and every month commencing on said date, deposit in

the First National Bank, to be held as security for the payment of this decree, good and new collateral security taken upon sale of goods in his store, in the aggregate not less than two hundred dollars; that the defendant shall collect the amounts due and payable on such security, from time to time, and deposit the same in said First National Bank, to the credit of the complainant, and which said sum shall be paid by said bank from time to time to the complainant in addition to the sum of one hundred dollars per month in cash. It is further ordered by the court that the sum of twenty-four and 50-100 dollars per month out of the above sum of $100 per month shall be retained by the complainant as her compensation for the non-payment in cash of the above principal sum of forty-nine hundred dollars, and that the balance of seventy-five and 50-100 dollars per month and the sums received by the complainant upon the collateral security deposited as aforesaid, shall be credited as partial payments on the said principal sum of money; and it is further provided that when the payments so credited from time to time shall aggregate the sum of $500, there shall be allowed as a credit upon said principal sum thereafter, interest on said sum of five hundred dollars at the rate of six per cent per annum, and likewise upon each successive sum of five hundred dollars, thereafter paid.

" It is further ordered, adjudged and decreed by the court that in order to secure the payment of the said sum of money ordered to be paid to the complainant, the said sum of money is hereby declared to be a lien upon all the real estate property of the defendant, and the court reserves the right to at any time hereafter, upon application of the complainant, alter this decree as to the time and manner of payment of said sum of money, and to order the whole amount remaining unpaid, due and payable at once, and to issue execution for the same.

" It is further ordered, adjudged and decreed that to secure the payment of said sums of money, the defendant is hereby restrained and enjoined from selling or disposing of his stock of goods and merchandise in the City of Springfield, and his collateral security in the hands of the First National Bank of Springfield, except in the usual and ordinary course of his business, and that he shall not dispose of, or reduce such stock or collateral security, at any time, so as to endanger the payment of the unpaid balances due the complainant under this decree.

" It is further ordered, adjudged and decreed that the complainant herein and her solicitors shall be given full

opportunity from time to time to inspect and examine the store of the defendant and the collateral security deposited with the First National Bank as herein provided, and that monthly statements of the amounts collected thereon shall be rendered to said bank for the use of the complainant and her solicitors."

From this decree, the appeal is taken, and appellant assigns for error, the action of the court in the following particulars: 1st, in overruling his demurrer; 2nd, in setting aside the original decree as to alimony; 3rd, in finding that there was fraud in obtaining appellee's consent to the alimony fixed in the original decree; 4th, in refusing to hear and consider evidence offered to show that the solicitors for appellee were to receive one-half or one-third of the amount of the alimony decreed; 5th, in making the decree a lien and enjoining appellant from handling his property as specified in the decree; 6th, in failing to protect appellant as to appellee's dower in the real estate; 7th, in giving appellee a lump sum for herself and child, and not protecting appellant on account of the future support of the child; and 8th, in making no provision for appellant visiting or seeing the child, or having it at stated times.

Appellee assigns as cross-errors, 1st, that the court erred in not decreeing to appellee a larger proportion of the property owned by appellant for her alimony; 2nd, that the court erred in not ordering said sum to be paid within a reasonable time, and in not providing for reasonable security for its payment; and 3rd, that the court erred in refusing to decree that execution issue forthwith against appellant for the sum allowed by the court, until payment thereof, or until reasonable security should be given by appellant for its payment.

Appellant's first assignment of error is not well taken. He demurred to appellee's petition, and to avail himself of the error complained of in the overruling of the demurrer, he should have stood by his demurrer. By answering over he must be considered as having waived it. Gordon v. Reynolds, 114 Ill. 118. Appellant's 2nd and 3rd assignment of error may properly be considered together. It is con-

ceded that where, without collusion, a valid ground for di-
vorce exists, the husband and wife may agree as to the
amount of alimony to be allowed upon a decree for divorce,
and such agreement is binding on the parties.    Storey v.
Storey, 125 Ill. 608.    Where the consent of the wife, to an
amount to be decreed to her as alimony, is coercively ob-
tained by the husband, and through his falsehoods and fraud-
ulent misrepresentation and concealment as to his financial
worth and his ability to provide for her, and a decree on
consent, so obtained, is entered, there is fraud in the pro-
curing of the decree, and a court of equity has inherent
jurisdiction to purge the decree of such fraud and enter a
decree awarding to the wife such alimony, as "from the
circumstances of the parties and the nature of the case, shall
be fit, reasonable and just."    The relief here sought by ap-
pellee is not, however, available to her under the provision
of the statute (chapter 40, sec. 18) authorizing the court
to make such alterations in the allowance of alimony and
maintenance, etc., as shall appear reasonable and proper;
that provision of the statute having been construed as
authorizing the interposition of the court, only where the
circumstances of the parties have changed since the former
decree, and as giving the court power, for causes accruing
subsequently, to alter and modify the allowance to meet
the changed condition of the party.    Cole v. Cole, 142 Ill.
19.    Does the evidence in this case show that the consent
of appellee to the alimony awarded her in the original de-
cree was coercively obtained by appellant, and through his
falsehoods and fraudulent misrepresentations and conceal-
ment, as charged?

The parties were married in 1887 and continued to live
together as husband and wife, until the entry of the decree
for divorce, April 22, 1901.    Appellant was a dealer in fur-
niture and household goods, selling the same, for the most
part, on the installment plan, taking notes and chattel
mortgages on the goods sold, to secure the payment of the
installments.    The evidence shows that for at least one
year prior to the decree for divorce, the parties had lived

unhappily as a result of the misconduct of appellant; that during that time he had frequently suggested to appellee the propriety of her applying for a divorce, and that she was adverse to doing so; that they frequently discussed the advisability of living separate and apart, and in that connection, of the provision to be made by appellant for the support of appellee and their child; that appellee at one time offered to take $1,000, and that appellant told her it would be impossible for him to raise that amount; that at another time appellee signified her willingness to be satisfied if appellant would allow her to live in a little house in Springfield and give her $20 a month, but appellant refused and insisted that she should leave the city and live elsewhere; that during all this time appellant told appellee that he was insolvent, that his indebtedness exceeded his ability to pay, that he was practically on the verge of bankruptcy and was only keeping up appearances; that appellant having finally obtained appellee's consent to apply for a divorce and to the allowance of the alimony fixed by the decree, employed his own solicitor to file a bill in her behalf, charging him with adultery; that appellee told such solicitor that the proceeding was contrary to her will, and that she did not want a divorce and appealed to him to advise her whether she was obliged to take the small amount offered by appellant, and that he, the solicitor, told her that if it was brought before the judge, she might not get more than half that amount, and advised her to take it; that upon the filing of the bill for divorce, appellant waived service of process, entered his appearance and consented to an immediate trial of the cause, himself securing the witnesses necessary to prove the allegations of appellee's bill as to his adultery.

As to appellant's financial worth at the time of the entry of the decree, we think the evidence clearly sustains the finding of the chancellor. Disregarding the testimony of one Smith, who it may be conceded urged appellee to file her petition to set aside the original decree and assisted her in uncovering evidence to do so, the evidence shows

that appellant, in April, 1901, had a stock of merchandise worth from $16,000 to $18,000; he so advised Smith, then his manager, in a confidential letter, when he could have had no motive, other than to tell the truth. Appellant testifies that his stock, then and since, was worth $10,000, and yet in September, 1901, he made a statement to a commercial agency in Chicago, that the cash value of his merchandise was $17,640. Appellant testifies that in April, 1901, he owed for merchandise $6,000; that he owed the First National Bank $11,000, to secure which he deposited with it chattel mortgages and leases amounting to $20,000. In his statement to the commercial agency, he fixes the amount of his merchandise indebtedness at $3,600; his indebtedness for borrowed money at $9,800; the amount of accounts, notes, leases, etc., considered good, at $33,000, and money in bank at $763. In August, 1899, in a hearing in a bankruptcy proceeding, in which his father and brother were adjudged bankrupts, appellant testified that his stock of merchandise was worth, approximately, $12,000, and that his sales averaged $3,000 to $4,000 a month. From April, 1901, to January, 1903, when his evidence was taken in this case, accepting his own statement, he had paid off indebtedness aggregating about $6,500. He testifies that for the year 1900, his total sales aggregated $33,000; that the total amount of cash received that year was $26,500, of which amount $22,000 was realized from sales on the installment plan, upon which there was a profit of fifty per cent. His credit was apparently good, as appears from the evidence of the bank cashier, who testifies that on April 22, 1901, appellant owed the bank $10,780; that the bank held his installment notes as collateral; that he did not consider the collateral as of very great value, but went on appellant's business integrity and business possibilities. The evidence also discloses that appellant owned an equity in certain real estate worth from $400 to $600, and that on April 22, 1901, he had $1,206.79 cash in the bank. In short, the evidence shows that on April 22, 1901, appellant was worth from $20,000 to $25,000 over and above his liabili-

ties, and abundantly able to provide appellee and their child with a comfortable support. Appellee had no personal knowledge of the details of appellant's business affairs, and their domestic relations for a long period of time prior to the divorce had been such as would tend to make him secretive with regard to his property and business, concealing from her, as far as possible, its value and extent. The decree under all the circumstances, was one obtained at his instigation and upon his terms, and was a fraud on her.

It is urged by appellant that the court erred in not hearing and considering evidence offered by him, to show that an agreement existed between appellee and her counsel, whereby the latter were to become entitled to a share of any additional alimony awarded her by the court. After all the evidence and arguments of counsel had been heard and considered by the court, and the court had announced his conclusion thereon, appellant's counsel asked that appellee and each of her counsel be sworn to testify in relation to the agreement mentioned, and the court declined to hear such testimony.

Appellant made no showing to the court why such evidence had not been offered in apt time, and there was no error in the ruling. Where, upon a reference to the master to report proofs without his conclusions, either party desires to offer further evidence on the hearing before the chancellor, they are not precluded from so doing, as in cases where the master reports the proofs with his conclusions, but in such case it should be done in apt time, and if not then, some reason should be given to entitle them to do so.

Appellant cannot complain that the decree does not provide for his visiting or seeing the child or having it at stated times. This is an application by appellee asking specifically that the former decree as to alimony be set aside; it does not relate to the custody of the child, and the question of appellant's right to see and visit the child, or have it at stated times, was not before the court.

We come now to a consideration of the question, as to whether the provisions in the decree, awarding appellee a

gross sum of $4,900 as alimony, and for its payment and
security, are consonant with justice and equity, in view of
all the circumstances in the case. The alimony awarded
appellee by the original decree has always been promptly
paid by appellant and the evidence does not disclose any
serious disposition on his part to evade its payment. Ap-
pellee is entirely dependent on the allowance to be made
her, for her support, and it is important to her that such
allowance should be available for current use. The better
method of awarding alimony is by an annual allowance,
payable at such intervals as may best suit the convenience
of the husband and meet the demands of the wife. Von
Glahn v. Von Glahn, 46 Ill. 134. Where the husband has
acquired property from the wife, or where his property
is of such description that it may be converted into
money or divided in kind, there is no objection to an
allowance in gross. Appellant's property consists almost
entirely of a stock of merchandise and notes and mortgages
taken by him in the usual course of his business of sales on
the installment plan. These securities are uniformly for
small amounts, payable at short intervals in installments,
and require constant and vigilant attention. The merchan-
dise is profitable if sold on the plan adopted by him, but is
not an available, quick asset. To require appellant to pay
the sum of $4,900 to appellee within a short time to be
fixed by the court, would operate as a great hardship on
him, and, on the other hand, to provide for its payment in
such installments as he could meet promptly, realized from
his business in its usual course, would not enable appellee
to advantageously invest the same as a permanent fund for
her support. When a gross amount is awarded as alimony,
it will be deemed a full discharge of all claims for future
support of the wife, (Plaister v. Plaister, 47 Ill. 290; Shaw
v. Shaw, 59 Ill. App. 268) but where an annual allowance is
decreed, the court has the power to alter or modify such
allowance, as the subsequent needs of the wife and ability
of the husband may reasonably and properly require.

The decree in this case enjoins appellant from selling or

disposing of his personal property except in the usual course of business, or from disposing or reducing the same so as to endanger the claim of appellee. This injunction is tantamount to a lien on the personal property of appellant and does not appear to be justified by the evidence in the case. A court of equity has no power to make a decree for alimony, a lien on personal property. Gelton v. Handley, 28 Ill. App. 540. It is also of doubtful propriety for a court of equity to permanently enjoin a husband from selling or disposing of his property. Errissman v. Errissman, 25 Ill. 136. It cannot be presumed that the appellant will pauperize himself to avoid the payment of a reasonable alimony to his wife, and we think the legitimate powers of a court of equity are amply sufficient to protect her.

The decree so far as it requires appellant to pay the sum of $4,900 to appellee as alimony in gross, will be reversed and a decree entered fixing the amount of alimony to be paid by appellant to appellee for the support of herself and child at $540 per annum, payable in monthly installments of $45, commencing April 23, 1901; appellant to receive credit for the amount paid by him as alimony under the former decree and also for the sum of $100 additional, paid by him to appellee; and appellant shall be required to pay to appellee within sixty days from the entry of the decree herein, the difference between the total amount of alimony heretofore paid by him together with the said $100, and the total amount of alimony accruing up to the entry of such decree, at the rate of $45 per month, execution to issue against appellant on failure to make such payment; the payment of the alimony herein provided for to be a lien on appellant's real estate. In all other respects the decree will be affirmed. Appellant is adjudged to pay two-thirds of the costs in the court and appellee one-third.

Affirmed in part, reversed in part and remanded with directions.