Gertrude G. Lorenson, Plaintiff in Error, v. John H. Lorenson. Defendant in Error.

1. Evidence—*what competent upon question of adultery.* Letters written by an alleged paramour are not competent against a person charged with adultery but letters written by the person so charged to such paramour, showing an affectionate disposition toward him, are competent.

2. Divorce—*what essential to establish adultery.* It is not necessary to prove the direct fact of adultery and in almost every case the fact is to be inferred from circumstances but the circumstances must be such as naturally to lead the mind to a belief of the fact by fair inference, as a necessary conclusion.

Divorce. Error to the Circuit Court of Macon county; the Hon. William C. Johns, Judge, presiding. Heard in this court at the November term, 1909. Reversed and remanded. Opinion filed March 30, 1910.

Redmon & Hogan, for plaintiff in error.

Henry I. Green, for defendant in error; Le Forgee & Vail and Mills Brothers, of counsel.

Mr. Presiding Justice Baume delivered the opinion of the court.

On September 14, 1908, plaintiff in error filed her bill for divorce against defendant in error alleging extreme and repeated cruelty. The defendant in error filed his answer denying the charges of cruelty, and also filed his cross-bill for a divorce from plaintiff in error, wherein he charged plaintiff in error with adultery with one Fred Aldred on divers times and occasions and especially in October, 1905, and with divers other lewd men whose names were unknown to said defendant in error. Plaintiff in error answered the cross-bill denying the charges of adultery, and upon the filing of replications the issues were submitted to a jury, who returned a verdict finding plaintiff in error guilty of adultery and finding that defendant in

error was not guilty of extreme and repeated cruelty. The chancellor entered a decree dismissing the original bill for want of equity, divorcing the parties for the adultery of plaintiff in error, and awarding the custody of their infant daughter to defendant in error.

It is urged that the verdict of the jury finding plaintiff in error guilty of adultery as alleged in the cross-bill is not warranted by the evidence and that such offense, if shown, was condoned, and a very careful examination and consideration of the evidence as it appears in the record compels us to the conclusion that this assignment of error must be sustained.   The evidence offered by the defendant in error in support of the allegations of the cross-bill considered most favorably in his behalf, is substantially as follows: Defendant in error testified that in October, 1905, he made a business trip to the state of Wyoming leaving plaintiff in error at his home with their daughter, then a child five years of age, Leslie Chapman, a young woman and member of the family, and Fred Aldred, a farm hand; that upon his return to his home after an absence of three weeks, the plaintiff in error was manifestly indifferent toward him and was frequently in tears; that in reply to his inquiry as to the cause of her indifference and tears plaintiff in error told him that was her secret, and that subsequently she told him that her secret was her love for Aldred; that he then asked Aldred if he (Aldred) loved plaintiff in error and Aldred replied that he did; and he then declared his intention to take the child and leave the house, and plaintiff in error told him not to go; that he said he could not stay if Aldred did, and Aldred said, "You have got to stop if I have to shoot;" that Aldred then left; that as Aldred was leaving plaintiff in error said "Good bye, Fred," and Aldred said, "How about that," and plaintiff in error replied, "You know;" that upon one occasion shortly after his return home when he and plaintiff in error were going to a box social, he, at her re-

quest, took Aldred also, and the three rode in a single buggy; that on a subsequent occasion in 1905, after Aldred had left his home, he met Aldred in a saloon in Champaign and Aldred signed a paper wherein he stated that he had hugged and kissed plaintiff in error during the month of October, while defendant in error was absent in Wyoming; that he subsequently showed the paper to plaintiff in error, who obtained possession of the paper and destroyed it. Jess Hall, who was employed by defendant in error as a farm hand after Aldred left, testified that in a conversation with plaintiff in error, she said in substance that if he was Fred Aldred she could love him. Sarah E. Caldwell testified that upon one occasion when she found plaintiff in error in tears she asked what the trouble was and plaintiff in error replied that she and her husband had had trouble over Fred Aldred; that she told plaintiff in error that the latter ought to get rid of him, and plaintiff in error replied, "I love him and I don't care who knows it." Ward Rudicil testified that plaintiff in error in speaking of Aldred said she liked him. Roy Mallow testified that plaintiff in error told him that she had no more use for her husband than a rabbit; that "Jay (meaning her husband) treated her all right, but she loved another fellow."

Defendant in error has assigned cross-error upon the refusal of the trial court to admit in evidence a package of letters written by Aldred to plaintiff in error, which letters were found by defendant in error in the attic of his house. These letters come within the rule announced in Razor v. Razor, 149 Ill. 621, and were properly excluded. Cross-error is also assigned upon the ruling of the trial court in refusing to admit in evidence a letter written by plaintiff in error and addressed to Aldred, which letter was intercepted by defendant in error before it was finished and signed. This cross-error is well assigned. The letter was clearly competent as an admission by plaintiff in error

of her disposition toward her alleged paramour and her relations with him. In this letter plaintiff in error addressed Aldred as "My Dearest Fred," and says, in part: "I'm not going to bother with this mail process much longer if Fred's heart is in the same place. I have got to wash tomorrow so some of my time will be occupied before mail time. If I was only in F. R. today I wouldn't care whether it was raining or sunshine for it would be all sunshine to me if it was the darkest day on earth. Fred, I get so discouraged to think we cant be together I dont see why things have to be this way. If there is really a just God I dont see why he dont make things more pleasant."

It is uncontroverted that subsequent to October, 1905, no opportunity existed for any adulterous relations between plaintiff in error and Aldred, and it is conceded that the only act or acts of adultery, if any, were committed during the month of October, 1905. There is not a scintilla of evidence in the record directly tending to show a disposition on the part of plaintiff in error and Aldred to commit adultery, or, if such disposition existed, that said parties ever had an opportunity to commit the act of adultery. The mere fact that the affections of plaintiff in error had been alienated, and that plaintiff in error admitted her affection for Aldred, is not sufficient to convict plaintiff in error of the serious charge of adultery with Aldred. True, in such cases, it is not necessary to prove the direct fact of adultery, and in almost every case the fact is to be inferred from circumstances, but the circumstances must be such as to naturally lead the mind to a belief of the fact by fair inference, as a necessary conclusion. Stiles v. Stiles, 167 Ill. 576; Carter v. Carter, 152 Ill. 434; Bast v. Bast, 82 Ill. 584; Cooke v. Cooke, 152 Ill. 286; Zimmerman v. Zimmerman, 242 Ill. 552. The brief for defendant in error states the rule relied upon to support the verdict and decree, as follows: "If the facts proven show a state of circum-

stances where the party charged with adultery has shown a marked affection and predilection for the party charged as paramour or co-respondent, and the disposition of both the parties to commit adultery, and the opportunity for the consummation of the act is proven, and all the facts and circumstances proven are such as to lead or impel the guarded discretion of a reasonable and just man to the conclusion that adultery has been committed, it is sufficient to justify a finding and verdict by the jury to that effect.'' Applying the rule thus stated to the evidence adduced on behalf of defendant in error, the verdict is unwarranted.

If it be conceded that the statement made by Aldred to defendant in error in October or November, 1905, that he (Aldred) had hugged and kissed plaintiff in error while defendant in error was absent in Wyoming, constitutes any substantive proof of the existence of adulterous relations between plaintiff in error and Aldred, and there is no more significant evidence in the record tending to establish such charge than such statement, defendant in error fully condoned the alleged adultery by thereafter continuing to cohabit with plaintiff in error until March, 1908.

Several instructions given at the instance of defendant in error are criticised as being inaccurate statements of the law bearing upon the issue of extreme and repeated cruelty under the allegations of the original bill, but we find no substantial error therein that could have operated to the prejudice of plaintiff in error. The instructions as given state the law substantially as it is announced in Von Glahn v. Von Glahn, 46 Ill. 134. See also Youngs v. Youngs, 130 Ill. 230. Other cases supporting the doctrine announced in Von Glahn v. Von Glahn, *supra,* are collated in a note to Noyes v. Noyes, 120 Am. St. Rep. 517.

The 14th instruction given by the court upon its own motion, insofar as it refers to acts of adultery other than with the co-respondent Aldred as affecting the

question of condonation, is not based upon any evidence in the record.

We have considered the objections urged as to other instructions given at the request of defendant in error, and find no fault therein.

Because the verdict finding plaintiff in error guilty of adultery is not supported by the evidence, the decree is reversed and the cause remanded.

*Reversed and remanded.*