(No. 54138.—

LARRY ALBAUGH, Appellee, v. THOMAS A. COOLEY, Appellant.·

*Opinion filed November 13, 1981.*

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, of counsel), for appellant.

Michael E. Dowd and Philip J. McGuire, of Dowd & Dowd, Ltd., of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Larry Albaugh, brought this action to recover for injuries he sustained when an automobile driven by defendant, Thomas A. Cooley, struck him as he crossed a roadway on foot. On request of defendant the trial court submitted to the jury a special interrogatory: "Do you find

that the plaintiff, Larry Albaugh, immediately before and at the time of the occurrence was guilty of any negligence which proximately contributed to cause his injuries?" The jury answered the special interrogatory, finding plaintiff guilty of contributory negligence, but also returned a general verdict in favor of plaintiff for $20,000. The trial court thereupon entered judgment upon the special interrogatory in favor of defendant pursuant to section 65 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 65). We note that our recent decision in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, has no effect on the decision here because this trial commenced prior to June 8, 1981, the date on which *Alvis v. Ribar* became effective. See 85 Ill. 2d 1, 28.

The appellate court, in three separate opinions, reversed and entered judgment on the general verdict in favor of plaintiff. (88 Ill. App. 3d 320.) The first opinion concluded that the evidence so overwhelmingly favored plaintiff on the issue of contributory negligence that no contrary verdict could ever stand (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510). It also concluded that section 65 is an unconstitutional violation of separation of powers (Ill. Const. 1970, art. II, § 1) because the enactment infringes upon the inherent judicial power of the court. The second opinion, in a special concurrence, agreed that no finding of contributory negligence on the part of the plaintiff could ever stand, but concluded that it was unnecessary to address the constitutionality of section 65. The third opinion, a dissent, found that the evidence was sufficient to support a finding of contributory negligence and that section 65 does not violate the separation of powers doctrine. We allowed defendant's petition for leave to appeal.

The record reflects that the accident occurred near the T-intersection of Rohlwing Road and Campbell Street in Rolling Meadows. Rohlwing Road is a two-laned road running generally north and south. The strip of Rohlwing Road near the pertinent intersection is on an S-curve. The

speed limit on Rohlwing Road is 30 miles per hour. Campbell Street extends east from Rohlwing Road and runs east and west. There is a stop sign on Campbell Street for cars entering Rohlwing Road, but there are no other stop signs or stop lights at the intersection. It is undisputed that at the time of the accident the sky was dark and the weather clear and dry.

Plaintiff testified that on March 15, 1973, prior to the accident, he left his house, which was a short distance west of Rohlwing Road, to test the range of a set of walkie-talkies with his son. Plaintiff walked eastward on the south side of Campbell for 1½ blocks while he talked to his son over his walkie-talkie and then crossed to the north side of Campbell. Plaintiff testified that he collapsed the walkie-talkie's antenna, which when extended was 2½ to 3 feet long, and put the unit into his right, rear pocket. He said he did not talk or receive on the unit again. Plaintiff walked west toward Rohlwing Road to return home.

Plaintiff testified that when he reached the corner of Rohlwing Road and Campbell Street he waited for a few cars on Campbell Street to turn right before he attempted to cross Rohlwing. A street light on the corner, he stated, illuminated parts of Campbell Street and Rohlwing Road. Plaintiff looked to the left and saw defendant's car one-half to one block away in a curve on Rohlwing Road. Plaintiff said he did not form an opinion as to the speed of defendant's car, but he knew the speed limit on Rohlwing Road was 30 miles per hour. He also knew defendant would not have to stop at a stop sign or light before continuing north. Plaintiff saw no cars from the right.

Plaintiff further testified he proceeded to cross Rohlwing Road and reached the middle of the road. He stated that in a deposition taken about one year earlier he had said he did not remember whether he actually reached the painted center line, but he could remember now. Plaintiff said he was facing west, but looked and "saw the car was

right up on top of [him]." He "lunged to try to get out of the way," but the car struck his right leg. He denied that he ever tried to turn around to get back to the curb. Plaintiff's right leg was injured, he claimed, because plaintiff had lunged with his right leg forward and the car was driven in front of his left leg.

In addition, plaintiff stated that there were white crosswalk lines across Rohlwing Road and that he was within these lines. He also said, however, a picture of the intersection he knew had been taken one week after the occurrence did not show white, painted crosswalk lines.

Steve Bialo, a former police officer, testified he arrived after the accident and found plaintiff lying on the west side of Rohlwing Road at the intersection directly in line with the crosswalk marks. He later said he did not remember whether there was a painted crosswalk across Rohlwing. He also said there is a pedestrian crosswalk "posted lining up with the sidewalk at that intersection or crossing." Bialo continued that the street light at the corner extends at an angle over Rohlwing and Campbell, but the street is not well lighted. Moreover, he testified that defendant told him that, as he swerved to avoid plaintiff, plaintiff started to run and ran into the front of his car.

Margaret Howell testified that immediately before the accident she was driving west on Campbell Street. Her 13-year-old daughter Christine was in the passenger's seat beside her. Ms. Howell stated that she first saw plaintiff walking west on the north side of Campbell Street about one-half or one block east of Rohlwing Road. She testified, "What caught my attention was that he had some type of a walkie-talkie or CB radio, a hand-type thing with a long antenna up in the air." She also stated that, at 15 to 20 feet from Rohlwing Road, plaintiff was still holding the unit with the antenna extended.

Ms. Howell further testified that at one point she was behind two or three cars that were waiting to turn at the

intersection. She saw defendant's car approach the intersection "going no faster than what the other traffic seemed to be that night." After defendant's car passed Campbell Street, the car in front of Ms. Howell turned. Ms. Howell did not know whether it turned left or right.

In addition, Ms. Howell testified she again saw plaintiff on the sidewalk "just as he came up to Rohlwing Road at which point I was stopped to take my turn to go on." Plaintiff was on the sidewalk at that time. When she looked to her right later she "saw the pedestrian who was at that time being perpelled [sic]." Ms. Howell did not actually see defendant's car strike plaintiff.

Ms. Howell, furthermore, testified that there is a street light at the intersection of Campbell and Rohlwing, but it extends more over Campbell than Rohlwing. The lighting conditions at the scene of the accident, she said, were fair to poor. She also testified that there were no painted crosswalk lines across Rohlwing Road that she knew of.

Christine Howell testified that she saw plaintiff as she was riding with her mother on Campbell Street toward Rohlwing Road. Although the record is unclear as to how many times she saw plaintiff, Christine said at one point she saw plaintiff standing at the edge of Rohlwing Road, where his next step would have taken him onto the pavement. When asked whether plaintiff was holding something in his hand, Christine answered, "It looked to me like a walkie-talkie." The antenna was up, she said, and the unit "was towards his head because it looked like he was talking to someone." Christine also testified that a few seconds before the accident she saw plaintiff "slowly running across the street." She did not actually see defendant's car strike plaintiff.

Defendant testified that at approximately 7:15 or 7:30 p.m. he was driving north on Rohlwing Road at 25 to 30 miles per hour. Defendant stated that for approximately 100 feet prior to impact the bright headlights from a car turning

left from Campbell Street were shining in his eyes. Defendant, testifying under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), stated that he first saw plaintiff when plaintiff was 15 to 20 feet in front of his car. Under direct examination, however, defendant said he had previously testified plaintiff was 10 to 15 feet in front of him. Defendant also testified plaintiff was approximately two or three feet east of the center line and was walking westward. Defendant started to swerve to the left until he saw plaintiff move, at which time he swerved to the right and applied his brakes. Plaintiff made a quarter turn in defendant's direction, "swung back," and started to move west. Defendant stated plaintiff also "put his hands out" and looked to defendant's car. Plaintiff appeared to be "holding something" in his right hand. Defendant was not able to identify the object. The front left fender of defendant's car made contact with plaintiff's right leg less than a second after defendant first saw plaintiff. Defendant stopped his car about 30 feet north of the accident, returned, and found plaintiff on the west shoulder of the road.

In addition, defendant testified there were no painted crosswalk marks across Rohlwing Road. And despite his earlier testimony that plaintiff was standing east of the center line when he first saw him, defendant stated there was no center line down the middle of Rohlwing. Defendant, furthermore, identified a picture showing that on the west side of Rohlwing, across from the north side of Campbell, there was no sidewalk. Defendant also testified an overhead street light extends over Campbell Street to illuminate the stop sign there. There is almost no light on Rohlwing where this accident took place, he claimed, only "a little spill over."

Plaintiff's attorney, moreover, asked defendant whether he saw a warning sign indicating that a pedestrian crosswalk was 500 feet ahead when he was driving north on Rohlwing. Defendant said he did not, but he has since seen the sign.

The record reflects that the trial court tendered to the jury Illinois Pattern Jury Instruction, Civil, No. 60.01 (2d ed. 1971), which enunciated the statutory law in effect for a pedestrian in a crosswalk. That statute provides as follows:

"When traffic control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—1002(a).)

(We note, however, that the evidence is conflicting as to whether the accident occurred in a crosswalk (Ill. Rev. Stat. 1973, ch. 95½, par. 1—113) or in a crossing other than a crosswalk, in which case the pedestrian would have to yield the right-of-way to the driver under these circumstances (see Ill. Rev. Stat. 1973, ch. 95½, par. 11—1003(a)). Defendant has not raised this point on appeal and our decision makes it unnecessary to further consider it.)

This statute, however, does not give a pedestrian on a crosswalk the right-of-way under all circumstances. (See *Moran v. Gatz* (1945), 390 Ill. 478, 486.) Plaintiff has a duty to be free from contributory negligence and to use due care for his own safety. (*Mueller v. Sangamo Construction Co.* (1945), 61 Ill. 2d 441, 446; *Moran v. Gatz* (1945), 390 Ill. 478, 482.) Each case must be determined on its own facts (*Moran v. Gatz* (1945), 390 Ill. 478, 486), and whether a pedestrian failed to use due care and is accordingly contributorily negligent is ordinarily a question for the jury (*Moran v. Gatz* (1945), 390 Ill. 478, 486; see *Hartgraves v. Cartage Co.* (1976), 63 Ill. 2d 425, 432; *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 246). Furthermore, as noted in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 504, "the constitution does, and judges should, carefully preserve the right of the parties to have a substantial factual

dispute resolved by the jury, for it is here that assessment of the credibility of witnesses may well prove decisive." Courts are not free to reweigh the evidence because they could have drawn different conclusions or because they feel other results would be more reasonable. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 42-43; see *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 87.) We must determine whether this jury's finding of contributory negligence in the special interrogatory was against the manifest weight of the evidence. *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 266; see *Sangster v. Van Hecke* (1977), 67 Ill. 2d 96, 100; *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 105; see *also Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 266.

We conclude that the evidence adduced at trial was sufficient for the jury to find plaintiff guilty of contributory negligence. Plaintiff testified that on a dark night in an intersection with only one street light he saw an approaching car one-half to one block away in an S curve and yet made no judgment as to the car's speed before proceeding to cross in front of it. Plaintiff also testified that he knew the speed limit on Rohlwing Road was 30 miles per hour and that defendant's car would not have occasion to stop before it approached him. Christine Howell testified that a few seconds before the accident she saw plaintiff slowly running across the street.

Under these circumstances the jury could have concluded that plaintiff knew or should have known of the impending danger of the advancing car and acted to avoid it. As the court stated in *Moran v. Gatz* (1945), 390 Ill. 478, 482:

> "[Plaintiff] had no right to rely entirely on the fact that [he] had the right of way. Neither had [he] a right to unreasonably intrude [himself] into the midst of traffic. The danger of such an act on [his] part would be apparent and have a natural tendency to hold [him]

back, and if [he] carelessly got [himself] into such a position, the law charges [him] with contributory negligence and leaves [him] remediless."

We also note the additional evidence that plaintiff testified he looked once before he attempted to cross Rohlwing Road and did not look again until the car was nearly "on top of" him. A pedestrian's failure to keep a constant lookout or to look again after having determined that he can safely cross ahead of approaching traffic leaves a question for the jury to determine whether he was in the exercise of ordinary care for his own safety. (*Moran v. Gatz* (1945), 390 Ill. 478, 486.) We add that although plaintiff said his walkie-talkie was in his right, rear pocket prior to the time he tried to cross the road, Christine Howell testified plaintiff had the unit "towards his head because it looked like he was talking to someone." The jury could have inferred that plaintiff was distracted by the walkie-talkie. At the very least, whether plaintiff maintained a proper lookout is a question properly before the jury. We, therefore, conclude the trial court correctly entered judgment for defendant in accordance with the special interrogatory.

We turn to section 65 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 65). Section 65 provides as follows:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly."

We find it unnecessary to consider the constitutionality

of section 65. This court has held that "[t]he generally prevailing rule is that an inconsistent special finding controls a general verdict, even in the absence of express statutory provision." (*Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 266; see Clementson, *Special Verdicts and Findings by Juries* 22-23, 126 (1905).) That a special finding of fact controls an inconsistent general verdict is merely a codification of the common law. (See *Walker v. New Mexico & Southern Pacific R.R. Co.* (1897), 165 U.S. 593, 596-98, 41 L. Ed. 837, 841-42, 17 S. Ct. 421, 422-23; see also Green, *A New Development in Jury Trial,* 13 A.B.A.J. 715, 716 (1927), Notes and Comments, *Special Verdicts: Rule 49 of The Federal Rules of Civil Procedure,* 74 Yale L.J. 483, 484-87 (1965); Wicker, *Special Interrogatories to Juries in Civil Cases,* 35 Yale L.J. 296, 296-98 (1925); Comment, *Special Findings and General Verdicts: The Reconciliation Doctrine,* 18 U. Chi. L. Rev. 321, 322 (1951); Morgan, *A Brief History of Special Verdicts and Special Interrogatories,* 32 Yale L.J. 575, 592 (1923); Clementson 1-19; *cf. VonGlahn v. VonGlahn* (1867), 46 Ill. 134, 144.) Similarly, there is authority that the provision that the jury "must be required on request of any party, to find specially upon any material question" is also a product of the common law. (See Clementson 32-33.) Therefore, in the absence of a conflicting supreme court rule, we are unprepared to strike down section 65. *Cf. People v. Kennedy* (1969), 43 Ill. 2d 200, 202; *People v. Harrawood* (1978), 66 Ill. App. 3d 163, 167-68.

We would make one further comment in regard to the view that the section does not allow the trial judge to determine whether a special interrogatory should be given if requested. The language of the section appears to be mandatory. However, this court has never interpreted section 65 to mean that the rights of the parties are absolute. (See *People v. Commercial Life Insurance Co.* (1910), 247 Ill. 92, 103; *Chicago City Ry. Co. v. Jordan* (1905), 215 Ill. 390, 394; *Chicago & Northwestern Ry. Co. v. Dunleavy*

(1889), 129 Ill. 132, 143-44; see also Clementson 49-54, 81.) In any event, the statute implicitly recognizes the court's discretion by limiting the parties' rights to have only those special interrogatories submitted which concern "material" questions of fact and by providing for review as a question of law.

For these reasons we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.