La SALLE NATIONAL BANK, Guardian of the Estate of Charles Murphy, a Minor, Plaintiff-Appellant and Cross-Appellee, v. THE CITY OF CHI-CAGO *et al.*, Defendant-Appellee and Cross-Appellant (Consolidated Rail Corporation, Defendant-Appellant and Cross-Appellee).

First District (2nd Division)   No. 86—0215

Opinion filed March 17, 1987.—Rehearing denied April 21, 1987.

Karlin & Fleisher, of Chicago (Richard S. Fleisher and David A. Novoselsky, of counsel), for appellant La Salle National Bank.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, Mark L. Karasik, Michael A. Pollard, and John C. Filos, of counsel), for appellant Consolidated Rail Corporation.

Sweeney & Riman, Ltd., of Chicago (Marvin Riman and Georgene M. Wilson, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

La Salle National Bank, as guardian of the estate of Charles Murphy (referred to hereinafter as plaintiff), brought suit against Consolidated Rail Corporation (hereinafter Conrail), the board of education of the city of Chicago (hereinafter the board), and the city of Chicago (hereinafter the city) to recover for injuries suffered by Murphy. A jury returned a verdict in the amount of $1,130,000, which was then reduced to $926,000 due to plaintiff's comparative negligence. Both defendants appealed that decision, and plaintiff also appealed the reduction in his recovery.

During the pendency of that appeal, Conrail and plaintiff agreed to a settlement whereby each would dismiss its appeal against the other in consideration of a loan agreement between them. The appeal between plaintiff and the city continued, however, and this court ultimately affirmed the circuit court's judgment. (*La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417.) Our supreme court later denied leave to appeal.

After the supreme court refused to review this court's decision, the city returned to the circuit court and sought to obtain a setoff against the judgment for the amounts paid plaintiff by Conrail. The circuit court eventually granted a setoff in the amount of $728,509. This second appeal followed.

The instant appeal concerns post-judgment proceedings relative to plaintiff's underlying suit for personal injury and, more specifically, the amount of that judgment and the manner of satisfaction of that judgment, after disposition of the initial appeal. The original judgment was entered on October 21, 1982, following a jury trial, in the amount of $1,130,000. As noted, that amount was reduced to reflect plaintiff's 18% comparative negligence.

As to the original judgment and the parties' liabilities, two items are of note. First, we note that prior to trial, the board settled its liability by paying plaintiff $40,000. We also note that Conrail claims a contractual right of indemnity from the city, a matter which the parties inform us is currently the subject of a separate suit pending in the circuit court.

During the initial appeal, Conrail and plaintiff reached a settlement agreement, whereby Conrail would provide an interest-free loan to plaintiff, who would purchase an annuity of fixed terms. That annuity would furnish plaintiff a guaranteed sum of $2,350,000 and have a present cash value of $728,509. In consideration of that agreement, plaintiff and Conrail dismissed their respective appeals with prejudice as to each other. Plaintiff and Conrail thereafter appeared before Judge Murphy of the circuit court requesting approval of the settlement and a finding of good faith under the Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*).

That hearing was held on August 24, 1982. The settlement itself was denominated a "loan agreement," and counsel for the city was present at the hearing. There was extensive discussion between the parties and the court regarding the city's presence. The following statements were made on that subject and are relevant to the issues raised on appeal:

"[Counsel for plaintiff]: We're here to present a settlement and

distribution order to Your Honor, since it is a minor, and the distribution must be approved.

It is my understanding that Conrail is also going to ask Your Honor to look at the settlement under the Contribution [Among Joint Tortfeasors] Act ***

* * *

[Counsel for plaintiff]: With all due respect to [the city], and based on the case law, I don't think the city of Chicago has any standing whatsoever to object to a settlement reached between a co-defendant and a plaintiff, has any right to object to the terms or conditions of that settlement.

* * *

[Counsel for plaintiff]: *** first of all, Your Honor has no power over the City of Chicago to affect any judgment or verdict reached as to the City of Chicago, because the mandate as to the City of Chicago has not issued.

The case is active in the Appellate Court. Counsel's suggestion that they may want to argue a setoff or reduction of the verdict is outside the power of this court.

* * *

[Counsel for plaintiff]: In this case this court doesn't have power over [the city. The city] is not here for the purposes of any order affecting a verdict or judgment as to them, no jurisdiction.

As far as they have a right to review this, they may have a right to a setoff, that is something that should be resolved, assuming the verdict is upheld on appeal, which I think it will be.

At that time, when it goes back to the Circuit Court for enforcement of the judgment, at that time and at that time alone, where the Circuit Court has been reinvested [sic] with jurisdiction for purposes of execution on the judgment, then the City of Chicago can raise any argument they have as to setoff or whatever.

* * *

[Counsel for Conrail]: I would concur with counsel for the plaintiff's statement that co-defendant here basically has no standing.

* * *

[Counsel for plaintiff]: I don't know that [counsel for the city] has any standing to object to the plaintiff choosing to accept a settlement of a judgment for tort from one defendant.

I think it's something the Court has to approve, and again I

would submit that [counsel for the city], although he wants to protect his client's interest, has no standing at this time."
Judge Murphy nonetheless asked the city's counsel to speak, noting that he was being "double teamed" by Conrail and plaintiff. The court also inquired as to why the city was afforded notice of the hearing if it had no standing, to which plaintiff responded that this was done simply as a matter of courtesy. The city was not furnished with a copy of the loan agreement prior to the hearing.

Judge Murphy stated that the primary reason the case was before him was to ascertain the reasonableness of the agreement and to protect the rights of the minor. The court found that the agreement was reasonable, that it was in the minor's best interests, and that it was entered into in good faith. The court conditioned its approval on the caveat that the order "will not affect the rights of the City of Chicago, a municipal corporation, and certainly have no effect on the matter that's pending on appeal before the Appellate Court." The settlement, and Judge Murphy's approval, was presented to the probate court, where it was also approved.

Following that settlement, the city moved in this court to dismiss the original appeal, arguing that the agreement was a covenant not to sue and also that it satisfied the judgment. This court denied the motion without comment and similarly denied the city's motion to reconsider that denial. The Illinois Supreme Court refused the city's request for a supervisory order on the matter. As noted above, this court eventually affirmed by a Rule 23 order the circuit court's judgment as to the issues raised by the city and plaintiff arising from the original trial, and our supreme court denied leave to appeal.

After our mandate issued, the city returned to the circuit court, this time before Judge Norman (who had presided over the original trial but apparently was unavailable when Conrail and plaintiff presented the post-trial settlement), and it requested a setoff reflecting the settlement between plaintiff and Conrail. Conrail thereafter moved for leave to intervene in that matter.

Hearings were held relating to the various motions before the court on December 9, 17, and 24, 1985. At the first hearing, the court held that it had proper jurisdiction over the matters raised by the motions. The court then granted Conrail's request for intervention. Judge Norman agreed with Conrail that Judge Murphy had found the existence of good faith in the loan agreement and concurred in that determination. The court then stated that it was not sitting in review of Judge Murphy's decision, as the latter had only evaluated the *bona fides* of the settlement for purposes of the Contribution Act. Judge

Norman ruled that under prevailing case law, the loan agreement must be construed as a covenant not to sue, as it was created after judgment had been entered against Conrail. He then ruled that in order to prevent the accrual of unjust enrichment to plaintiff, the city was entitled to a setoff reflecting the board's $40,000 settlement and Conrail's settlement. The court then instructed the parties to reach an agreement as to the amount of the judgment still unsatisfied.

When the parties returned to court on December 17, plaintiff and Conrail again attacked the court's jurisdiction, to the same effect as they had done earlier. After additional discussion, the court again directed the parties to draft an appropriate order.

At the final hearing on December 24, plaintiff contended that since the city was insured for its liability, interest on the judgment should be calculated at the rate of 9% (the statutory rate for post-judgment interest on private parties) rather than at 6% (the rate for public entities). That assertion was predicated on the fact that the lower interest rate was designed to protect the public treasury; since the insurance carrier would cover the debt, no such protection was necessary. The city maintained that the judgment debtor was a public entity and therefore the 6% rate applied. The court agreed with the city and therefore fixed the rate at 6%. The setoff was then fixed as the sum of the present value of the annuity, and this appeal followed.

The threshold question on appeal is raised by both Conrail and plaintiff and concerns whether the circuit court had been properly vested with jurisdiction to address the matters encompassed by the city's motion for setoff. In that motion, the city claimed that the settlement between plaintiff and Conrail was effectively a covenant not to sue and that since the jury returned a verdict against both the city and Conrail as joint tortfeasors, that settlement should be set off against the judgment. Although the setoff was presented to and approved by Judge Murphy in a hearing attended by all three litigants in August 1984, the city did not request any setoff until November 1985.

Conrail and plaintiff seize on that lapse of time as the premise to their argument against jurisdiction. They assert that Judge Murphy's decision was final and appealable in August 1984 and that the circuit court of Cook County lost jurisdiction over the matter after the expiration of 30 days' time. (See 103 Ill. 2d p. 303(a)(1).) This, in their analysis, precluded Judge Norman's consideration of any setoff. A contrary holding, Conrail and plaintiff maintain, would result in permitting circuit court judges of coordinate authority to sit in review of each other's decisions.

It is true that a judgment becomes final and appealable when it ends the litigation on the merits and determines the rights of the respective parties. (See *In re Annexation of Certain Territory to the City of Darien* (1973), 16 Ill. App. 3d 140, 143, 304 N.E.2d 769.) When a litigant fails to challenge that order, the circuit court loses jurisdiction over the matter after the passage of 30 days' time. (See *Havlen v. Waggoner* (1981), 92 Ill. App. 3d 916, 416 N.E.2d 684.) While we agree with these general principles, we find that they do not apply to the facts of the case at bar.

When the settlement was presented to Judge Murphy, plaintiff and Conrail made much of the fact that the city was present as a mere courtesy; both settling parties asserted that their agreement was between themselves only and that the city lacked standing to object to it, argue its merits or otherwise take any action concerning it. As evidenced by the excerpts from the transcript of proceedings set out above, the position of plaintiff and Conrail was that Judge Murphy was addressing only their respective rights and not those of the city. Indeed, it is notable that the city was not so much as provided with a copy of the loan agreement prior to the hearing, for Conrail had asserted that the City (which was then prosecuting its appeal before this court) would have had to obtain an order in this forum to gain access to those documents. Insofar as plaintiff and Conrail were concerned in August 1984, the circuit court lacked jurisdiction over any matters pertaining to the city during the pendency of the city's appeal.

■ We agree with Conrail and plaintiff that Judge Murphy was powerless to address the rights of the city. As a general rule, the filing of a notice of appeal divests the circuit court of jurisdiction over the case. (87 Ill. 2d R. 301; *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380.) As was stated in *City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 298, 430 N.E.2d 14:

> "It is undisputed that upon filing a notice of appeal, the circuit court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the appellate court attaches instanter. [Citation.] Of course, once the jurisdiction of the appellate court attaches by reason of the filing of a notice of appeal, the trial court is without jurisdiction to take any further action insofar as the notice of appeal affects the subject that the trial court might seek to act upon. [Citation.] However, the trial court retains jurisdiction to hear and determine matters arising independent of and unrelated to that por-

tion of the proceeding that pends on appeal [citation], and purely collateral or supplemental matters are left under the control of the trial court [citation.]. Further, while an appeal is pending, the trial court may amend the record to correct matters of inadvertence or mistake, but it is denied the power to remedy defects of substance which would make it a new case."

The filing of the original notices of appeal divested the trial court of jurisdiction over all of the parties. This fact was recognized by Conrail and plaintiff, who dismissed their respective appeals with prejudice in order to revest the circuit court with jurisdiction to hear the matters raised by their settlement. The appeal between plaintiff and the city remained before this court, and Judge Murphy correctly recognized that he could not adjudicate any dispute between those parties in view of the pending appeal. To address any right to a setoff held by the city would affect the substance of the matters on appeal, where the city was challenging the finding of liability itself. Indeed, a setoff at that juncture would have created a "new case." Judge Murphy was conscious of this fact when he approved the settlement, and he explicitly noted that his ruling would not affect any rights of the city.

■ We find it extraordinarily disingenuous, and completely inconsistent, for Conrail and plaintiff to argue at this point that the city should have asked for a setoff before Judge Murphy, when they went to such lengths to convince the court (correctly, in that instance) that it was without jurisdiction to do so. In particular, we note the following statement by plaintiff, in which Conrail concurred:

"As far as they have a right to review this, they may have a right to a setoff, that is something that should be resolved, assuming the verdict is upheld on appeal, which I think it will be.

At that time, when it goes back to the Circuit Court for enforcement of the judgment, at that time and at that time alone, where the Circuit Court has been reinvested [*sic*] with jurisdiction for purposes of execution on the judgment, then the City of Chicago can raise any argument it may have as to setoff or whatever."

Clearly, Conrail and plaintiff anticipated the city's request for a setoff and affirmatively sought to delay that setoff until after disposition of the city's appeal. (Indeed, we note that had the city been ultimately successful in its appeal, the question of any setoff would have been moot.) Since the trial court was without authority to address any rights of the city, we cannot agree with plaintiff and Conrail that the city's failure to perfect an appeal from Judge Murphy's order served to deprive the city of any setoff to which it might be entitled. When

our mandate issued following the initial appeal, the circuit court was revested with jurisdiction to address the question of a setoff. The city acted promptly in returning to the circuit court and in presenting its motion to Judge Norman. We conclude that Judge Norman had jurisdiction to entertain that motion, and, accordingly, we reject the contention of Conrail and plaintiff to the contrary.

■ Conrail and plaintiff next assail the propriety of Judge Norman's ruling on the merits. Judge Norman granted the city a setoff, valued the settlement at $728,509, and reduced the jury's award accordingly. The thrust of the challenge herein depends upon several facts. Initially, Conrail and plaintiff maintain that when Judge Murphy ruled, he approved the settlement as a valid loan agreement, entered into in good faith and in the best interests of the minor. Plaintiff and Conrail assert in this forum that Judge Norman's ruling was contrary to, and in effect overruled, Judge Murphy's decision. We cannot agree with this conclusion.

While it is indisputable that one circuit court judge cannot sit in review of the actions of a judge of coordinate authority (see *Balciunas v. Duff* (1983), 94 Ill. 2d 176, 446 N.E.2d 242), the events herein belie such activity on Judge Norman's part. He did not review or disturb Judge Murphy's decision. Rather, he accepted that decision and gave effect to it in light of the fact that when the case was again before him, the court had been revested with jurisdiction over a party (the city) not before Judge Murphy. Nor was the city "judge-shopping" here; rather, the city returned to the judge who had presided over the trial itself. As noted earlier, Judge Norman's court was possessed of jurisdiction over the matter. Judge Murphy had not addressed the ramifications of his approval of the settlement on the city, but instead specifically noted that his decision would not affect any rights of the city. It follows that Judge Murphy's determination did not preclude Judge Norman from construing the loan agreement as a covenant not to sue and as a partial satisfaction of judgment.

Indeed, there is ample support for Judge Norman's decision. In the seminal case of *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, our supreme court approved a loan agreement between a plaintiff and one of several joint tortfeasors, where the agreement was reached prior to judgment, it was disclosed, and the nonsettling defendants had the opportunity to test the effect of the agreement on the testimony of the witnesses and on their case. Later, in *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, the supreme court relied on its prior holdings in *Reese* and in *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445,

332 N.E.2d 58, stating:

" 'Examination of our opinion in [*Reese*] clearly shows that the "loan agreement" was *made prior to trial before liability of the multiple defendants could be adjudicated.* There is no language contained therein which fairly suggests that such a procedure would be approved on appeal to provide a sole basis whereby a defendant, who is alleged to be a joint tortfeasor and against whom liability is determined, might seek consideration of an issue previously decided adversely to the plaintiff in his action against a co-defendant. \*\*\*' (Emphasis added.) (*Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 451-52.)

This suggests, and we make explicit, that the use of loan agreements is proper only where judgment has not been reached. We assume, of course, the agreement was entered into in good faith." (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 170, 390 N.E.2d 859.)

The supreme court thereupon construed the loan agreement, entered into after judgment and presumptively made in good faith, as a partial satisfaction of judgment. This is, of course, substantially what occurred in this case before Judge Norman. (See also *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 441, 396 N.E.2d 534 ("loan agreements between a plaintiff and one defendant are invalid if executed before the circuit court's judgment and it is kept secret; we also held conclusively 'that the use of loan agreements is proper only where judgment has not been reached' "); *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 412 N.E.2d 959.) Clearly, Judge Norman was not questioning the *bona fides* of Conrail and plaintiff insofar as the loan agreement was concerned; he was merely going beyond that fact to ascertain the proper effect to be given that agreement under prevailing case law, given the fact that Conrail and plaintiff had anticipated further proceedings to delineate the ambit of any potential setoff.

Finally as to this issue, assuming that Judge Murphy had ruled on the good faith of the settlement, we note, parenthetically, that Judge Norman would arguably have been privy to information bearing on that determination not known to Judge Murphy, namely, the inconsistent position of Conrail and plaintiff *vis-a-vis* how, when, and where the city could seek a setoff reflecting the settlement. Conrail and plaintiff made every effort to assure Judge Murphy that the city could not challenge the settlement until after disposition of the original appeal. Upon the occurrence of that event, Conrail and plaintiff adopted

the position that the city should have attacked the settlement when it was before Judge Murphy. These facts might conceivably have undermined the initial determination as to the good faith of the settlement.

■ The city, Conrail, and plaintiff next assail the valuation of the settlement. Conrail and plaintiff assert that the setoff, designed to reflect the value of the settlement (an annuity with a present cash value of $728,509), should have been limited to the amounts already paid plaintiff, or $440,000. The city maintains that since the total guaranteed cash value of the settlement was $2,350,000, well in excess of the jury award, it constituted a full satisfaction of judgment and should have been valued at that higher amount. Neither party has cited any authority directly addressing the valuation of an annuity such as that employed herein.

It is well established that in weighing the amount of damages to be assessed against a tortfeasor (such as Conrail and the city herein), the jury is required to discount the amount of future damages to their present value. (See *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288; *Avance v. Thompson* (1944), 387 Ill. 77, 55 N.E.2d 57.) Juries typically are instructed regarding this concept as follows:

"In computing the damages arising in the future [because of injuries] [because of future (medical) (caretaking) expenses] [or] [because of the loss of future earnings] you must not [simply multiply the damages (by the length of time you have found they will continue) (or) (by the number of years you have found that the plaintiff is likely to live)]. Instead, you must determine their present cash value. 'Present cash value' means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the [damages] [expenses] [and] [earnings] at the time in the future when [the damage from the injury will be suffered] [the expenses must be paid] [or] [the earnings would have been received]." (Illinois Pattern Jury Instruction, Civil, No. 34.02 (2d ed. 1971).)

The parties have not provided us with a complete record of the underlying trial or the exact nature of plaintiff's damages, but it appears that the jury's award was discounted to present cash value. That being the case, to adopt either the position of the city (fixing the amount of the setoff at the full value of the annuity, which will be paid out over several decades) or at the amount advanced by Conrail and plaintiff (at the amount paid to date only) would do violence to the jury's award and result in a windfall to one party. If the city's cal-

culus is accepted, it will reap the windfall of having the damages discounted, but not the amounts paid by its codefendant tortfeasor. If the lesser valuation of the amounts actually paid is accepted, plaintiff will reap the windfall of accepting an annuity with a purchase cash value of $728,509 while reducing the award by only $440,000. We cannot approve either alternative. We conclude that simple justice requires that both the jury's award and the settlement be discounted in the same manner. This was exactly what Judge Norman did.

■ The next question raised concerns the appropriate rate of interest to be charged on the judgment. At common law, no interest on judgments was awarded. (See Ill. Ann. Stat., ch. 110, par. 2—1303, Historical and Practice Notes, at 580, (Smith-Hurd 1983).) The passage of section 2—1303 altered this, allowing the assessment of post-judgment interest at the rate of 9% where the debtor was a private party and at the rate of 6% where the debtor was a public entity. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1303.) The city, obviously, is a public entity, and the circuit court fixed the rate of interest at 6%.

Plaintiff asserts that this was error, because although the city was indeed a public entity, the city was not ultimately liable for the debt. Rather, the city was fully insured, and the insurance carrier would fund the debt. In essence, plaintiff asserts that since the purpose underlying the reduced interest rate disappeared, so too should the deferential interest rate.

In support of that assertion, plaintiff cites a number of cases which have discussed the reduced interest rate on municipalities:

> "The statute in the instant case imposes a lower rate of judgment interest on governmental bodies than on other entities. The legislature may well have enacted the disparate interest rates in order to somewhat lessen the burden on the taxpayers who ultimately pay for judgments rendered against governmental entities." *Harrington v. City of Chicago* (1983), 116 Ill. App. 3d 137, 139, 452 N.E.2d 26.)

See also *Waukegan Port District v. Kyritsis* (1984), 128 Ill. App. 3d 751, 471 N.E.2d 217; *Estate of Ahmed v. County of Cook* (1986), 146 Ill. App. 3d 719.

The question of the proper rate of interest to be paid by a public entity wholly insured by a private carrier appears to be one of first impression in Illinois. We believe that in such circumstances, the rate should be set at 6%. A number of considerations lead us to this conclusion.

■ Initially, we note that the statute involved herein is in derogation of the common law and as such should be strictly construed. (*City*

*of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 413 N.E.2d 394.) All statutes are to be interpreted in such a manner as to give effect to the intent of the legislature, and the words of the statute are the primary sources of deriving that intent. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.) Since the legislature clearly stated that where the judgment debtor is a governmental body, the interest is fixed at 6% and, in light of the fact that the legislature created no exceptions to that rule, we believe that the trial judge was manifestly correct in his decision.

Moreover, we do not believe that the city is entirely insulated from the judgment by virtue of its insurance coverage. As with any insured, the city necessarily pays a premium for its coverage; accordingly, logic and common sense require that the premium set by the carrier reflect the degree of the exposure of the insured and the risks of that coverage. It follows as a necessary corollary that if the existence of insurance permits a higher rate of interest on the judgment, the insurance carrier will increase the premium to account for that factor. Consequently, even if the city would not directly fund the judgment, allowing interest at the rate of 9% would necessarily increase the premiums, thus indirectly diluting the public treasury. The rationale for the disparate rates, therefore, does not disappear where the city is insured; hence the disparate rates are still operative.

■ The final issue raised on appeal is the city's contention that Conrail should not have been permitted to intervene because it allegedly had no interest in the matter of the setoff. Intervention is controlled by the Code of Civil Procedure, which provides in pertinent part:

> "(a) Upon timely application anyone shall be permitted as of right to intervene in an action: ***; (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order of judgment in the action ***." (Ill. Rev. Stat. 1985, ch. 110, par. 2—408.)

We believe that the circuit court acted properly in allowing Conrail to intervene.

Under the terms of the loan agreement, Conrail loaned plaintiff money to purchase an annuity valued at $728,509, which would be repaid by plaintiff after disposition of the case against the city. Plaintiff would pay Conrail 50% of the first $198,091 plaintiff received from the city, and 100% of the excess thereafter up to $728,509. Conrail's repayment was thus directly affected by the nature of the city's setoff, especially as to the valuation of that setoff. Indeed, if the city's

valuation were to be adopted, there would be a full satisfaction of judgment, and the city would pay nothing to plaintiff. This fact obviously had clear implications as to Conrail's rights and interests, thus we cannot agree with the city that intervention was inappropriate.

For the above stated reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC and STAMOS, JJ., concur.