ROBERT W. CHLADEK, SR., Adm'r of the Estate of Robert Chladek, Jr., Deceased, Plaintiff-Appellee, v. CAROL ALBON, Defendant-Appellant.

First District (4th Division)   No. 86—1723

Opinion filed September 17, 1987.

LINN, J., dissenting.

Beverly, Pause, Duffy & O'Malley, of Chicago (Robert O. Duffy, John M. Murray, and Michael W. Rathsack, of counsel), for appellant.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, Todd A. Smith, and David A. Novoselsky, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from a judgment entered under the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, pars. 1, 2) against the defendant, Carol Albon, for the loss suffered by the plaintiff Robert W. Chladek, Sr., as administrator, as a result of the death of his son, Robert, Jr. The trial court directed the verdict for the plaintiff and the jury then awarded the Chladeks $290,000 in damages. On appeal to this court, Albon challenges the propriety of the directed verdict; certain statements made by the plaintiff's counsel during closing argument; and the amount of the damage award.

Robert, Jr., was struck and killed by an automobile driven by Albon. At the time of the accident, the decedent, age five, was with two neighbor children, Denise, age 13, and R.T., age eight. As the diagram below reflects, the three were on the south side of 183rd Street just west of Pulaski. The car driven by Albon was in the left lane and going west on 183rd Street. After waiting for the traffic light at the intersection of Pulaski and 183rd to change, Albon proceeded through. Following behind her car was that driven by Gerald Cirullo, with his wife as a passenger. Proceeding in the opposite direction on 183rd, which was the south side of 183rd where the decedent was located, was a car driven by Beverly Campbell. In front of Campbell's car were several other cars turning north onto Pulaski from 183rd.

The accident occurred at approximately 6:15 p.m. on December 16, 1980, at which time it was dark and all the cars had their headlights on. The child named R.T. was wearing a yellow raincoat and Robert, Jr., was wearing a dark jacket.

Nonscale diagram taken from appellant's brief

The evidence at trial revealed that just moments before Robert, Jr., was hit, R.T. had successfully run through the traffic to the north side of 183rd Street. Robert, Jr., then also ran in a northerly direction across 183rd, yet was struck by the left front corner of Albon's car and died the next morning. The estate of Robert, Jr., subsequently brought this action under the Wrongful Death Act against Carol Albon.

At trial, Albon testified that she did not see either R.T. or Robert, Jr., run into the street and could not explain why she failed to see either boy. She stated that the intersection was well lit and that nothing obstructed her view or distracted her. The weather was clear and visibility was good. Albon also stated that she would have been able to brake suddenly if it were necessary because she was only going 20 miles per hour at the time of the accident.

Beverly Campbell, who was traveling in the opposite direction, testified that she saw something leave the south curb to her right. She stated that the child was approximately 1½ car lengths in front of her when she noticed him. She started to brake and slow down and the child ran directly in front of her car and almost simultaneously into Albon's car. Further, she testified that she had not seen any

other child run across the street.

Driving the car behind Albon was Gerald Cirullo. Cirullo testified that at approximately 70 feet in front of his car he saw a child wearing a yellow raincoat running across 183rd Street. He stated that he watched until the child was past the car in front of him. He then noticed shadows under the cars in the eastbound lanes and a few seconds later he saw a boy, who was about 2 to $2\frac{1}{2}$ feet tall, emerge in the middle of the eastbound lanes. Cirullo lost sight of the boy after the boy went from the middle of the eastbound lane into the westbound lane. He did not see the accident. He also testified that Albon had not slowed down after the child in the yellow jacket ran across or before the impact with the decedent. He stated that he had a better view of what was transpiring than did the Albon car and that he saw the boy in the headlights of Albon's car.

Patricia Cirullo, a passenger in Gerald Cirullo's car, testified that she saw the first child run across the street and that her husband then slowed down. She then saw something in the air. In addition, she stated that the Albon car in front of her did not brake or slow down. After all the evidence was presented, the trial court directed a verdict for the plaintiff on the issue of liability.

On appeal, Albon's first contention is that the trial court erred in granting the plaintiff's motion for a directed verdict. Albon argues that the issue of liability should have been left to the jury because there are certain facts from which the jury could infer that Albon acted reasonably and not negligently. Specifically, to explain the fact that she failed to see either boy run across the street, Albon points to the darkness, the time of day, the traffic conditions, the commercial nature of the area, the height of the decedent and the fact that he was wearing dark clothes. Albon contends that these facts, and the inferences that could be drawn therefrom, provide an excuse or explanation for why she did not see the child, and therefore, the issue of liability should have been allowed to go to the jury.

■■ The standard to be applied in determining whether a directed verdict is proper is whether all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Furthermore, the *Pedrick* court noted that "the constitution does, and judges should, carefully preserve the right of the parties to have a substantial factual dispute resolved by the jury." (37 Ill. 2d 494, 504, 229 N.E.2d 504.) In this case the trial court placed great emphasis on the fact that Albon could not explain her

failure to see the decedent. We believe that the trial court placed undue emphasis upon this fact.

■■ Although Albon provided no explanation for the accident, this should not automatically translate into a finding that she was negligent. Not every witness who testified in this case saw the decedent. Nor was there testimony or evidence showing that the presence of the child was obvious or that Albon was clearly driving in a negligent manner. On the contrary, Albon points to specific conditions from which the jury could infer that Albon acted reasonably. In particular, the accident occurred at night and in the middle of the block, there was traffic on all sides, and the decedent was wearing dark clothes. At a minimum, whether Albon maintained a proper lookout and acted reasonably under the circumstances is a question for the jury. (*Albaugh v. Cooley* (1981), 87 Ill. 2d 241, 251, 429 N.E.2d 837.) Consequently, under the *Pedrick* standard, based upon this evidence a jury may in fact have reached a contrary verdict. Accordingly, Albon's right to have this fact question decided by the jury should not have been taken away by directed verdict.

■■ ■ Additionally, Albon raises issues concerning the propriety of certain statements made by plaintiff's counsel during closing argument, the admissibility of certain testimony and the appropriateness of the jury award. In light of our decision reversing the directed verdict, we will only address those issues that are likely to arise in the new trial. Albon challenges on appeal the propriety of the testimony of the treating physician and paramedic regarding the death of Robert, Jr. These witnesses testified as to the injuries sustained by the decedent and the medical care that was administered to him. Albon contends that in light of the fact that pain and suffering are not properly an element of damages in an action under the Wrongful Death Act, the evidence was irrelevant and should not have been allowed.

The determination of the relevancy of evidence is within the discretion of the trial court and absent an abuse of that discretion, reversal is not warranted. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 496, 464 N.E.2d 751.) Evidence is deemed to be relevant if it has a tendency to render a fact in issue more or less probable. *Benson v. Bradford Mutual Fire Insurance Corp.* (1984), 121 Ill. App. 3d 500, 510, 459 N.E.2d 689.

■■ In this case, the physician testified as to the injuries to the brain, difficulty as to breathing and emission of blood from the decedent's ears. The paramedic testified as to the fact that the child was placed in traction and given mouth-to-mouth resuscitation. There was

no question, however, that the decedent died as a result of the injuries sustained when struck by Albon's car. Consequently, we fail to see how this evidence is relevant to show the cause of death. As a result, we believe the trial court abused its discretion in allowing the testimony into evidence.

■ Similarly, Albon argues that evidence as to the background of the parents and mental condition of the decedent's sister was improperly admitted. The allowed evidence included testimony as to how the parents met, the educational history of the parents, the prior history of the family and the mental condition of the sibling, who was taking medication for a personality disorder. Albon suggests that the only evidence which is necessary to establish the loss of society is that pertaining to the family relationship at the time of the death of the decedent. We do not agree. The Illinois Supreme Court, in discussing this measure of loss, has stated that the value of a human life consists of many elements and an individual member of a family has value to others as part of a functioning social and economic unit. (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 540, 442 N.E.2d 163.) The unit in this case is the entire Chladek family and the decedent's value to that familial relationship. Providing background information as to the family and the mental or physical condition of the members of the family provides a context which the jury needs to evaluate the decedent's value to the whole. The evidence as to the decedent's sister's personality disorder is relevant to demonstrate the effect and loss upon an already burdened family. Evaluation of the loss cannot be considered in a vacuum, but rather, must include an understanding of the interrelationship among all its members. Consequently, the evidence relating to the parents' background and the sibling's personality disorder was relevant and properly allowed.

Albon also raises issues regarding various statements made by the plaintiff's counsel during closing argument. Because we do not believe these matters will arise again in the new trial, we will not address those questions. Further, review of the damage award is also unnecessary in light of our disposition.

For the foregoing reasons, the directed verdict by the trial court is reversed and this cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

McMORROW, P.J., concurs.

JUSTICE LINN, dissenting:

The majority concludes that "whether Albon maintained a proper lookout and acted reasonably under the circumstances is a question for the jury." (161 Ill. App. 3d at 888.) The majority holds, therefore, that the trial court erred in directing a verdict for plaintiff. On the issue of liability I believe that a directed verdict is appropriate in this case. The record shows that Albon was negligent as a matter of law and that her negligence proximately caused plaintiff's injuries. The evidence so overwhelmingly favors plaintiff that no contrary verdict based on this evidence could ever stand. I would affirm the judgment of the trial court in all respects. Consequently, I respectfully dissent.

The majority applied the correct standard to this cause. A trial judge may enter a directed verdict in a case only when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

The majority holds, however, that the jury, based upon the evidence in the instant case, could have reached a contrary verdict. They point to the facts that "the accident occurred at night and in the middle of the block, there was traffic on all sides, and the decedent was wearing dark clothes." 161 Ill. App. 3d at 888.

A driver has a duty to keep a safe lookout and must take into consideration the fact that he or she may be required to stop or slow a vehicle suddenly. Failure to maintain a safe lookout constitutes negligence on the part of the driver. (*Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, 392, 406 N.E.2d 927, 930, citing *Burroughs v. McGinness* (1978), 63 Ill. App. 3d 664, 667, 380 N.E.2d 37, 39.) Albon, thus, owed a duty to the decedent to maintain a proper lookout.

The majority points to facts, and the inferences that could be drawn therefrom, that provide an excuse or explanation for why she did not see the child. The majority reasons that the trial judge erred in directing a verdict for plaintiff since the jury could have reached a contrary verdict based on this evidence. I disagree.

In *Pantlen v. Gottschalk* (1959), 21 Ill. App. 2d 163, 157 N.E.2d 548, we held:

"[O]ne cannot look with unseeing eye and not see the danger which he could have seen by the proper exercise of his sight, or stated another way, one will be deemed to have observed that which would necessarily have been seen if he had looked, and will not be absolved of the charge of negligence in failing to look by testimony that he looked and did not see." 21 Ill. App.

2d 163, 170, 157 N.E.2d 548, 551, cited in *Grass v. Hill* (1981), 94 Ill. App. 3d 709, 715, 418 N.E.2d 1133, 1137. This rule applies for the purpose of proving a plaintiff's allegation of negligence. *Mort v. Walter* (1983), 98 Ill. 2d 391, 398, 457 N.E.2d 18, 22.

Applying these principles to the instant case, I conclude that Albon was negligent as a matter of law. The record shows that on the night of the accident, visibility was clear and weather conditions were good. Albon testified herself that nothing obstructed her vision on either side of the street. The record further shows that the other drivers in the vicinity not only saw the decedent, but also saw R.T., who ran in front of the cars just prior to the time that the decedent did. Albon simply looked with an unseeing eye and failed to see the decedent, whom she would have seen had she kept a proper lookout.

Notwithstanding the facts and inferences upon which the majority relies, I believe that the evidence in this case so overwhelmingly favors plaintiff that no contrary verdict could ever stand. The able trial judge, therefore, properly directed a verdict for plaintiff.

For the foregoing reasons, I would affirm the judgment of the trial court.