VALERIE R. STRINGHAM, as Adm'r of the Estate of David E. Stringham, Deceased, and for the use and benefit of Tracy Stringham, *et al.*, Plaintiff-Appellee, v. UNITED PARCEL SERVICE, INC., Defendant-Appellant.

Second District No. 2—88—0591

Opinion filed March 29, 1989.

Stephen E. Balogh, of Williams & McCarthy, P.C., of Rockford (John W. France, of counsel), for appellant.

Clark, McGreevy & Johnson, P.C., of Rockford (Robert H. Clark, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, United Parcel Service, Inc. (UPS), appeals from a judgment of the circuit court of Winnebago County entered on a jury verdict for $252,631.08 ($505,262.16 reduced 50% by the negligence of plaintiff's decedent) in favor of plaintiff, Valerie R. Stringham, as administrator of the estate of David E. Stringham, deceased, and for the use and benefit of her two children, Tracy and Tina Stringham, in this wrongful death action.

On appeal, defendant contends that the trial court erred by (1) allowing testimony regarding the future care, treatment, and prognosis of a beneficiary, (2) allowing an economist to calculate present cash value of future earnings using factors for inflation and growth of earnings, (3) precluding defendant's economist from testifying beyond what had been disclosed in discovery, and (4) precluding defendant's toxicologist from testifying to his opinion regarding the proximate cause of decedent's death.

As the only issues raised on appeal are evidentiary errors, we need only briefly summarize the facts of the occurrence. On December 27, 1985, at approximately 10:20 p.m., the vehicle being driven by David E. Stringham collided with the rear end of defendant's semi-tractor trailer, which was temporarily parked with its emergency light flashers on in the curb lane of the four-lane road, two lanes in each direction. While the driver of defendant's vehicle stated that he was only stopped for a short while in order to close the passenger door in the cab which had come open, another witness testified that the truck had been parked there as long as 20 minutes. Stringham died from injuries resulting from the accident. Evidence was introduced that he had a blood-alcohol level of .21. Stringham was divorced from his former wife, Valerie R. Stringham, and left two children surviving, Tracy and Tina. Tina was seven years old and suffers from Down's Syndrome.

Defendant first contends that the circuit court erred in denying its motion *in limine* and allowing into evidence testimony regarding

the future care, treatment, and prognosis of a surviving child of decedent, Tina Stringham, who has Down's Syndrome. In this regard, defendant objects to the testimony of Dr. Robin Spencer that Tina would receive a maximum level of education to the third or fourth grade, that Tina would need someone to follow her development and foster her for the rest of her life, that Tina's visual impairment will get progressively worse as she grows older, that Tina has no substantial income earning potential, and that all Tina's afflictions and deteriorating conditions were based upon a reasonable degree of medical certainty. Defendant argues that the health or helplessness of a beneficiary in a wrongful death action is an improper consideration, relying principally on *Freehill v. De Witt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52. Essentially, defendant maintains that damages may not be recovered for future, speculative conditions brought on by Down's Syndrome as contrasted to allowable compensation for loss of benefits of companionship which exist in a family relationship. Plaintiff responds that this testimony was relevant, not speculative, and was properly admitted to show the nature and extent of the loss of decedent's society to Tina, citing *Chladek v. Albon* (1987), 161 Ill. App. 3d 884, 515 N.E.2d 191.

■ In a wrongful death action, the jury may award pecuniary damages for a child's loss of instruction and training due to the death of the father. (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 537-38, 442 N.E.2d 163; see Illinois Pattern Jury Instructions, Civil, No. 31.04 (2d ed. 1971).) The trend in the more recent Illinois Supreme Court decisions interpreting the Wrongful Death Act has been to expand the scope of pecuniary injury to encompass nonmonetary losses. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 514, 468 N.E.2d 1228.) The supreme court in *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288, in construing the Wrongful Death Act and the term "pecuniary injuries" contained therein, looked to *Miller v. Southern Pacific Co.* (1953), 117 Cal. App. 2d 492, 256 P.2d 603, where a jury's award was upheld for children's loss of the father's guidance, attention, advice, training, and instruction. See *Elliott v. Willis* (1982), 92 Ill. 2d 530, 537, 442 N.E.2d 163.

In *Chladek v. Albon* (1987), 161 Ill. App. 3d 884, 515 N.E.2d 191, the appellate court considered whether evidence as to the mental condition of decedent's sister, that she was taking medication for a personality disorder, and other family background was improperly admitted. The court held that evidence pertaining to the family relationship was not limited to the time of the death of the decedent, and evidence of decedent's sister's personality disorder was relevant to demon-

strate the effect and loss upon an already burdened family—necessary to an understanding of the interrelationship among all the family members. *Chladek*, 161 Ill. App. 3d at 889, 515 N.E.2d at 194.

While the appellate court in *Freehill v. De Witt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52, relied on by defendant, stated that "[i]n an action for wrongful death, the wealth, health, poverty or helplessness of the beneficiary cannot be considered in determining the damages for the wrongful death" (*Freehill*, 125 Ill. App. 2d at 320, 261 N.E.2d at 58), the more recent supreme court and appellate court cases cited above appear to have diminished the vitality of that holding insofar as they now admit testimony of future health or helplessness if relevant to show a child's loss of his father's guidance, attention, instruction, moral training and superintendence of education. Moreover, in *Freehill* testimony was erroneously admitted as to the expenses incurred for treatment of cancer by decedent's spouse.

■ Accordingly, we find relevant in this case a limited inquiry into Tina's Down's Syndrome, including the extent of her educability, her development, and any future visual impairment, all of which Dr. Spencer was able to determine to a reasonable degree of medical certainty. This information provided a context in which the jury could evaluate the decedent's value in providing guidance, attention, and instruction to the child and the attendant pecuniary loss to the child. While the testimony of Tina's lack of income earning potential was not relevant (see *Wilcox v. Bierd* (1928), 330 Ill. 571, 581, 162 N.E. 170; Illinois Pattern Jury Instructions, Civil, No. 31.07 (2d ed. 1971) (in determining pecuniary injuries the jury may not consider the poverty or wealth of the child)), such error in the admission of this brief testimony was not prejudicial and did not affect the outcome below, as it is insignificant and was not specifically referred to again in the trial or arguments. See *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115, 483 N.E.2d 273.

Defendant next argues that the circuit court erred in allowing the testimony of plaintiff's witness, Jack Skeels, an economist, as to the value of decedent's projected future earnings because Skeels, in calculating the present value of future earnings, had incorporated a factor accounting for inflation. Defendant maintains that, under Illinois law, the effects of inflation are not to be considered in determining the present value of future earnings. Defendant contends that Skeels' testimony resulted in an excessive verdict unsupported by any proper evidence.

While Skeels' testimony describing the method he followed in computing decedent's future earnings is somewhat lacking in clarity, from examination of this testimony and the written income loss analysis prepared by Skeels and entered into evidence, we understand the method employed by Skeels to be as follows. Skeels first projected how long decedent would have been expected to work, had he lived, based upon actuarial data. Skeels then determined the amount decedent would be expected to earn during his working life based upon decedent's income and certain personal characteristics. In doing so, rather than assuming decedent's income level would remain constant, Skeels generated an age income profile predicting, based upon statistical data, how decedent's income would change over time due to factors such as increased experience. The income age profile data does not account for the effect of inflation on wage levels, as it is apparently based upon data comparing income levels of workers of different ages at the same point in time.

Skeels next discounted decedent's future earnings to present value. In doing so, Skeels used a base discount rate of 7.3% from which he subtracted 6%, representing "growth of earnings," giving a net discount rate of 1.3% used in the present value calculation. Skeels stated during cross-examination that growth of earnings is essentially inflation and that subtracting it from the discount rate "squeezed out" the effect of inflation from the calculation.

Defendant argues that the use of inflation or growth of earnings factors in calculating present value is improper. Defendant cites *American National Bank & Trust Co. v. Thompson* (1987), 158 Ill. App. 3d 478, 511 N.E.2d 1206, wherein it was held that the plaintiff's expert's method of calculating present cash value which considered growth of earnings and inflation was "not in accordance with the legal definition of present cash value as set forth in IPI Civil 2d No. 34.05 and the relevant case law." 158 Ill. App. 3d at 483-84, 511 N.E.2d at 1209.

■ It is well established that, in weighing the amount of damages to be assessed against a tort-feasor, the jury must discount the amount of future damages to their present value. (*La Salle National Bank v. City of Chicago* (1987), 154 Ill. App. 3d 456, 466, 506 N.E.2d 1326; see also *Avance v. Thompson* (1944), 387 Ill. 77, 55 N.E.2d 57.) There is, however, little authority in Illinois governing whether inflation may be taken into account in computing future awards, and if so, how it is to be taken into account.

■ In *Jones & Laughlin Steel Corp. v. Pfeifer* (1983), 462 U.S. 523, 76 L. Ed. 2d 768, 103 S. Ct. 2541, the United States Supreme

Court noted that at one time, many American courts did not allow consideration of the effects of inflation in computing awards of lost earnings. (*Pfeifer*, 462 U.S. at 539-40, 76 L. Ed. 2d at 785, 103 S. Ct. at 2552; see also Comment, *Inflation, Productivity, and the Total Offset Method of Calculating Damages for Lost Future Earnings*, 49 U. Chi. L. Rev. 1003, 1011 (1982) (hereinafter Damages for Lost Future Earnings).) These courts accepted evidence of both individual and societal factors that would lead to wage increases even in an inflation-free economy but required proof that those factors were not influenced by predictions of future price inflation, reasoning that such estimates were unreliably speculative. (*Pfeifer*, 462 U.S. at 540, 76 L. Ed. 2d at 785, 103 S. Ct. at 2552.) However, in discounting to present value, these courts applied a market interest rate. As market interest rates increase in response to inflation, the Court stated:

> "The effect of [this method] was to deny the plaintiff the benefit of the impact of inflation on his future earnings, while giving the defendant the benefit of inflation's impact on the interest rate that is used to discount those earnings to present value. Although the plaintiff in such a situation could invest the proceeds of the litigation at an 'inflated' rate of interest, the stream of income that he received provided him with only enough dollars to maintain his existing *nominal* income; it did not provide him with a stream comparable to what his lost wages would have been in an inflationary economy." (Emphasis in original.) (462 U.S. at 540, 76 L. Ed. 2d at 785, 103 S. Ct. at 2552.)

In other words, predicting future earnings without considering the effects of inflation on wage levels produces an unrealistically low estimate of the plaintiff's total future earnings. When this estimate is discounted by the market interest rate, the plaintiff will receive an award which, even if invested at that rate, would yield fewer dollars than if the plaintiff had continued earnings which kept pace with inflation. See *O'Shea v. Riverway Towing Co.* (7th Cir. 1982), 677 F.2d 1194, 1199.

Because of this problem, today, in a majority of jurisdictions, courts attempt to account for the effects of inflation in some way. (See *Pfeifer*, 462 U.S. at 540-41, 76 L. Ed. 2d at 785, 103 S. Ct. at 2552; *American National Bank & Trust Co. v. Thompson* (1987), 158 Ill. App. 3d 478, 490, 511 N.E.2d 1206 (Buckley, J., dissenting).) Courts have developed several approaches. One approach incorporates inflation into the computation of future earnings and then discounts that amount using the market interest rate as the discount rate. An-

other approach does not consider inflation in estimating total earnings but uses a discount rate equal to the market interest rate minus the inflation rate. (See *O'Shea*, 677 F.2d at 1199; see also *Damages for Lost Future Earnings*, 49 U. Chi. L. Rev. at 1014-15.) Both these approaches yield identical results. *O'Shea*, 677 F.2d at 1199.

Still other courts employ two other methods. One, the "partial offset" or "real interest" method, assumes that market interest rates exceed inflation by an essentially constant amount over time. This amount, generally believed to be 1.5% to 2%, is known as the "real" interest rate. (See 22 Am. Jur. 2d *Damages* §146 (1988); *Damages for Lost Future Earnings*, 49 U. Chi. L. Rev. at 1016-18; *Pfeifer*, 462 U.S. at 541-42, 76 L. Ed. 2d at 786, 103 S. Ct. at 2553.) A court employing the partial offset method does not allow consideration of inflation in estimating total future earnings, but, in discounting to present value, uses the real interest rate rather than the market rate.

The final method, the "total offset" method, assumes that inflation and other factors affecting growth of wages will equal the ideal discount rate. Hence, in predicting total future earnings inflation is not considered, nor is any discounting to present value performed as the two steps would cancel each other out. See 22 Am. Jur. 2d *Damages* §145 (1988); *Damages for Lost Future Earnings*, 49 U. Chi. L. Rev. at 1018-1022; *Pfeifer*, 462 U.S. at 544-46, 76 L. Ed. 2d at 787-89, 103 S. Ct. at 2554-55.

In the instant case, plaintiff's economist appears to have employed a method accounting for inflation by subtracting the inflation rate from the appropriate market interest rate in discounting to present value, which is equivalent to first increasing future earnings by the inflation rate and then discounting by the market interest rate. Defendant notes that such a method is improper in view of the holding of the Appellate Court for the First District in *American National Bank & Trust Co. v. Thompson* (1987), 158 Ill. App. 3d 478, 511 N.E.2d 1206. In that case, the court stated that "[w]hile in some jurisdictions the testimony of plaintiff's expert might, with proper explanation, be admissible to demonstrate to the jury the total amount of future damages, *i.e.*, to demonstrate the effect the inflation rate and growth of real earnings would have on future earnings, it has not been the rule in Illinois." 158 Ill. App. 3d at 484, 511 N.E.2d at 1210.

We find, however, little support in Illinois case law for the proposition in *Thompson* that evidence of the effects of inflation on future earnings is inadmissible in Illinois. We observe that in *Raines v. New York Central R.R. Co.* (1970), 129 Ill. App. 2d 294, 263 N.E.2d 895,

*rev'd on other grounds* (1972), 51 Ill. 2d 428, 283 N.E.2d 230, the appellate court held that evidence concerning future inflationary trends was speculative and therefore inadmissible. (129 Ill. App. 2d at 305-06, 263 N.E.2d at 900.) However, in reversing the decision of the appellate court, on the basis that the award was supported by other proper evidence, our supreme court expressly declined to "examine the validity of the defendant's contention that the admission of evidence regarding future inflation resulted in an excessive verdict." (*Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 437, 283 N.E.2d 230, 235; see also *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 581, 284 N.E.2d 266; *Twait v. Olson* (1982), 104 Ill. App. 3d 191, 198, 432 N.E.2d 1244; *Crabtree v. St. Louis-San Francisco Ry. Co.* (1980), 89 Ill. App. 3d 35, 40, 411 N.E.2d 19; *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 46-47, 343 N.E.2d 207; *Walczak v. General Motors Corp.* (1976), 34 Ill. App. 3d 773, 776, 340 N.E.2d 684.) *Prendergast v. Cox* (1984), 128 Ill. App. 3d 84, 470 N.E.2d 34, cited in *Thompson*, notes the lack of any authoritative decision as to the propriety of evidence or argument concerning the effects of future inflation. In *Prendergast*, the court merely held that where no evidence as to future inflation was present, it was proper to sustain an objection to argument of counsel urging jurors to consider inflation. 128 Ill. App. 3d at 92, 470 N.E.2d at 39.

Illinois Pattern Jury Instructions, Civil, No. 34.05 (2d ed. 1971) (IPI Civil 2d) defines "present value" as follows:

> " 'Present cash value' means the sum of money needed now, which, together with what that sum will earn in the future, will equal the amounts of the pecuniary benefits at the times in the future when they would have been received."

Defendant notes that the *Thompson* court found that consideration of inflation or growth of earnings is inconsistent with this definition. Both defendant and the court in *Thompson* fail to recognize that two steps are involved in determining a proper award based on loss of future earnings, and that IPI Civil 2d No. 34.05 only pertains to the second step in the process. Before the amount of future earnings can be discounted to present value, it must be determined what that amount is. We agree that once the amount of future earnings to be discounted is known, the inflation rate plays no role in the discount process. However, inflation is relevant to the initial step of determining the total amount of future earnings. In the instant case, plaintiff's economist subtracted inflation from the interest rate during the discount stage. However, as previously noted, this method is mathematically equivalent to inflating earnings and discounting by an unad-

justed market interest rate. Thus, we do not find the result of this method inconsistent with the definition of present value in IPI Civil 2d, No. 34.05.

■ We, therefore, decline to follow *Thompson* as we believe it is illogical and indefensible to build inflation into the discount rate and yet ignore it in calculating the lost future wages that are to be discounted. (*O'Shea v. Riverway Towing Co.* (7th Cir. 1982), 677 F.2d 1194, 1200.) We further find that the method employed by plaintiff's economist is an appropriate method of accounting for the impact of inflation. We do not hold that it is the only proper method, nor do we address the propriety of the economist's use of actual figures involved in the case in his testimony rather than "neutral figures" (see *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 177-78, 133 N.E.2d 288; *Thompson*, 158 Ill. App. 3d at 485-86, 511 N.E.2d at 1210), as the parties have not raised this issue.

Defendant next contends that its own economist, Dr. Robert Van der Ohe, was improperly barred from testifying to the present cash value of decedent's future earnings pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). On March 8, 1988, several weeks before trial began, defendant filed supplemental answers to plaintiff's supplemental interrogatories in which defendant disclosed Van der Ohe as an expert witness it might call at trial. Further, the answer stated that the subject matter of his testimony would be "present value of future cost of support" and provided Van der Ohe's report setting forth the amount necessary to provide $25 per week to each of decedent's two children until age 21 and, in Tina's case, for life. Defendant called Van der Ohe, and, following his testimony on the matter previously disclosed, attempted to elicit an opinion on present cash value of decedent's future earnings. Following plaintiff's objection for failure to disclose that the witness would render an expert opinion on this particular subject, the trial judge barred Van der Ohe's testimony on this matter based on defendant's failure to disclose pursuant to Rule 220(b).

Defendant contends that, as it disclosed Van der Ohe as an expert witness, Rule 220(b) is inapplicable. Rather, subsections (c) and (d) of Rule 220 are more relevant. In this regard, defendant essentially argues that Van der Ohe's testimony was not an undisclosed shift in theory or belief, citing *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, 520 N.E.2d 852, and that, as the testimony was based on testimony of plaintiff's expert, Dr. Skeels, there would be no surprise or prejudice resulting if the testimony was admitted, citing *Mazur v. Lutheran General Hospital* (1986), 143 Ill. App. 3d 528, 493 N.E.2d 62,

and *Georgacopoulos v. University of Chicago Hospitals & Clinics* (1987), 152 Ill. App. 3d 596, 504 N.E.2d 830.

It is evident that defendant did disclose Van der Ohe as an expert witness in its supplementary answers to plaintiff's supplementary interrogatories. Defendant disclosed, however, that the subject matter of the witness' expert testimony was the "present value of future cost of support." Nevertheless, defendant at trial also sought to ask his opinion on the present value of decedent's future earnings. The proffered testimony would have contradicted plaintiff's expert's testimony as to the method of computing present cash value of future earnings. We conclude that this testimony clearly went beyond the scope of what had been disclosed in the supplemental answer to interrogatories and was in violation of Rule 220(d).

Rule 220(d) provides:

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (107 Ill. 2d R. 220(d).)

Its purpose is to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries and it limits the permissible scope of an expert's testimony to those opinions expressed in response to discovery. (107 Ill. 2d R. 220(d), Committee Comments.) Defendant had limited the scope of its expert witness' testimony by its answer to supplemental interrogatories during the discovery process. We are unpersuaded that any of the cases cited by defendant are relevant to the factual circumstances present here, nor is the reasoning applicable. The failure to comply with Rule 220 will debar the witness from testifying on the particular subject matter not disclosed unless to do so would create a manifest injustice. See *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 224, 511 N.E.2d 974.

Defendant's last contention is that his expert toxicologist witness, Dr. Komiskey, was improperly prohibited by the trial court from rendering an opinion on the causal relationship between David Stringham's intoxication and the accident. In a motion *in limine*, the trial court barred this opinion, but allowed any testimony by Komiskey as to what .21 blood-alcohol level means in terms of an individual's impairment. During trial, Dr. Komiskey testified extensively

on the impairment of senses, motor coordination, and attention span of a person with a blood-alcohol content of .21, such as defendant, although he was not allowed to specifically testify as to how this would affect someone's ability to drive an automobile. Defendant, nevertheless, further argues that the expert should have been allowed to testify on the ultimate issue of proximate cause.

In *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809, our supreme court held that because the trier of fact was not required to accept the opinion of the expert, allowing him to testify to the ultimate issue in the case did not usurp the province of the jury. (49 Ill. 2d at 122, 273 N.E.2d at 811; see also *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 221, 483 N.E.2d 524.) Relaxation of the proscription of opinions on the ultimate issue has not, however, affected the requirement that to be admissible opinion testimony must be of assistance to the trier of fact. (*Freeding-Skokie Roll-Off Service, Inc.*, 108 Ill. 2d at 221, 483 N.E.2d at 526; *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 99, 382 N.E.2d 1201.) A trial judge possesses wide discretion in allowing expert testimony which he feels will aid in the understanding of the issues in a particular case. *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 516, 388 N.E.2d 844; *Stanley v. Board of Education* (1973), 9 Ill. App. 3d 963, 973-74, 293 N.E.2d 417.

As the jury here heard ample opinion evidence on the impairment to a person caused by a blood-alcohol content of .21 and, in particular, the severity of the impairment depending upon percentage of the blood-alcohol reading, we find that an opinion on whether there was a causal relationship between plaintiff's decedent's intoxication and the accident to be of little assistance to the jury in this case as they could form their opinion on causation from the evidence in the record. Therefore, the ruling by the trial judge was not an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.